[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/27/99
THOMAS K. KAHN
CLERK

No. 98-9299

D. C. Docket No. 1:96-cv-487-MHS

JOHN W. RAGSDALE, JR., Trustee, for the
bankruptcy estate of Ned W. Miller,

Plaintiff-Appellant,

versus

RUBBERMAID, INC., RUBBERMAID
COMMERCIAL PRODUCTS, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(October 27, 1999)**

Before CARNES, Circuit Judge, HILL, Senior Circuit Judge, and HOEVELER*,
Senior District Judge.

---

*Honorable William M. Hoeveler, Senior U. S. District Judge for the Southern
District of Florida, sitting by designation.

HILL, Senior Circuit Judge:

This case presents a single question of law issue on appeal: after a terminated whistleblowing employee files a complaint on behalf of the United States Government against his former employer pursuant to the *qui tam* provisions of the False Claims Act[1] (FCA or the Act), 31 U.S.C. § 3729, *et seq.*, does the doctrine of res judicata bar his FCA § 3730 (h) claim for retaliation, filed after the *qui tam* action settles?  The district court answered in the affirmative, granting summary judgment for the defendants.  Under a *de novo* review, we affirm.

I.

Ned Miller[2] was employed as a salesman by Rubbermaid Commercial Products, Inc., a subsidiary of Rubbermaid, Inc. (collectively Rubbermaid), from 1988 until he was fired in March 1992.  Ten months later, in January 1993, he filed a whistleblower action (Rubbermaid I) on behalf of the government against

---

[1]The Act was first passed in 1863 by Congress at the request of President Lincoln to combat profiteering by Union Army suppliers during the Civil War.  *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1496-98 (11th Cir. 1991) (for an historical discussion of the FCA).  The purpose of the Act, then and now, is to encourage private individuals who are aware of fraud being perpetrated against the government to bring such information forward.  *Id.* at 1497 (citations omitted).  The shorthand *qui tam* is derived from the Latin phrase "qui tam pro domingo rege quam pro se imposo sequitur" meaning "who brings the action as well for the king as for himself." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 746 n.3 (9th Cir. 1993), *cert. denied*, 114 S. Ct. 1125 (1994).

[2]Although Miller was the original plaintiff in this case, his trustee in bankruptcy was substituted as plaintiff by district court order dated November 17, 1997.

Rubbermaid alleging fraudulent billing practices under the *qui tam* provisions of the FCA.[3] At that time, for whatever reason, he did not state an FCA claim for retaliatory discharge in this complaint. After the government intervened in the lawsuit, Miller remained as a relator. When Rubbermaid I settled, Miller consented to the settlement agreement and received $185,000, his bounty for reporting the fraudulent activity. 31 U.S.C. § 3730 (c)(1). Subsequent to the settlement, in February 1996, he then filed a retaliation action (Rubbermaid II) against his former employer under Act § 3730 (h), a provision that prohibits employers from retaliating against employees who file or assist in *qui tam* actions against their employer.[4]

---

[3]One month before he was terminated, Miller had informed Rubbermaid of his concerns about their pricing practices.

[4]The provision reads:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730 (h).

Using the transactional approach to claim preclusion, the district court found that Miller's Act § 3730 (h) claim in Rubbermaid II and his *qui tam* claim in Rubbermaid I arose out of the same nucleus of operative fact. *See Citibank, N. A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990). It therefore held that the second claim was barred by the doctrine of res judicata and granted Rubbermaid's motion for summary judgment. Miller appeals.

II.

Although the two claims arise under the same chapter of the United States Code, Miller contends that those involved in Rubbermaid I and Rubbermaid II involve distinct rights and duties and different causes of action. He argues that the issue here in Rubbermaid II is not whether the government was overcharged by Rubbermaid but whether he was fired by Rubbermaid for questioning its pricing practices. In short, Miller claims, the government has no interest in the relief he now seeks.

Miller concedes that the facts in Rubbermaid I and II are related in time, and debatably, would have formed a convenient trial unit. He suggests that, as the first case did not require a determination of the reason for his termination, his retaliation claim in Rubbermaid II therefore did not arise out of the same operative nucleus of fact as did the *qui tam* claim in Rubbermaid I. *Id.*

4

Rubbermaid, on the other hand, contends that Rubbermaid I and II are based upon the same factual predicate and contain the same cause of action for res judicata purposes. It argues that both claims rest upon statutory provisions of the FCA; both claims relate to Miller's former employment with Rubbermaid; both claims involve the same parties and witnesses; and both claims would have made a convenient trial unit.

Similarly, Rubbermaid contends that in order to avoid piecemeal litigation, Miller could have *and should have* raised his Rubbermaid II claim as part of his Rubbermaid I claim. Then all claims arising out of the same facts and involving the same parties would have been litigated in one forum.[5]

Rubbermaid also strongly emphasizes the point that Miller's cause of action in Rubbermaid II accrued at the time his employment was terminated, some ten months *before* he filed Rubbermaid I. This is not a case, they argue, where an employee files a FCA claim, blowing the whistle on his or her employer; pricing violations are litigated; and *then* the employee is fired. Res judicata is applicable,

---

[5] Rubbermaid relies heavily upon a Southern District of Texas case. *United States ex rel. Paul v. Parsons, Brinkerhoff, Quade & Douglas, Inc.*, 860 F.Supp 370 (S.D.Tex.1994), *aff'd without opinion,* 53 F.3d 1282 (5th Cir. 1995). In *Paul*, the plaintiff first brought a wrongful termination claim for his unwillingness to violate the FCA in state court. After that case was adjudicated, he then filed suit against his former employer in federal court alleging pricing violations under the FCA. The district court dismissed his FCA claims on the basis of res judicata. It found that, although Paul's second complaint asserted a new theory and a new measure of recovery, it arose from the same operative facts that gave rise to his prior lawsuit. *Id.* at 374-75.

Rubbermaid contends, because both of Miller's claims had accrued as of the date he filed his first complaint.

III.

Barring a claim on the basis of res judicata is a determination of law. *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir. 1992). Our standard of review therefore is *de novo. Id.,* citing *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1548 n.1 (11th Cir.), *cert. denied,* 111 S.Ct. 387 (1990).

IV.

The purpose behind the doctrine of res judicata is that the "full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 99 S.Ct. 970 (1979). Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding. *Citibank,* 904 F.2d at 1501 (citing *I. A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986)).

Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the

parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.[6] *Id.* From the record it is clear that the first three requirements are met. First, there was a final judgment on the merits in Rubbermaid I. The parties reached a settlement agreement and executed a stipulation of dismissal, barring a later suit on the same cause of action. *Id.* at 1501-1502. Second, the Rubbermaid I court had proper jurisdiction. *Id.* Third, the parties are identical.[7] *Id.* Only the fourth element of claim preclusion, identity of the cause(s) of action, remains. Do Miller's FCA retaliatory discharge claim against Rubbermaid and his *qui tam* claim under the FCA against Rubbermaid epitomize the same cause of action?

In the Eleventh Circuit, "[t]he principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case. In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Citibank,* 904 F.2d at 1503 (citations omitted). "It is now said, in general, that if a case arises out of the same

---

[6] Rubbermaid argues that Miller confuses res judicata with the doctrine of collateral estoppel on appeal. Rubbermaid claims that this case does not involve collateral estoppel as neither it nor the district court analyzed this case under that theory.

[7] Miller contends that after the government intervened in Rubbermaid I and assumed primary control, he was merely a relator, not a true party. The Act makes clear, however, that with certain exceptions not relevant here, relators have unrestricted participation in the litigation. 31 U.S.C. §§ 3730 (c)(1), 3730 (c)(2)(C)(iv), 3730 (c)(2)(D).

nucleus of operative fact, or is based upon the same factual predicate, as a former

action, that the two cases are really the same 'claim' or 'cause of action' for

purposes of res judicata." *Id.*

We "must [therefore] look to the factual issues to be resolved [in

Rubbermaid II], and compare them with the issues explored in" Rubbermaid I. *Id.*

Did they arise out of the same transaction or series of transactions?[8] Could Miller

---

[8]    The Restatement (Second) of Judgments describes the rationale of a transactional approach to claim preclusion. *See* Restatement (Second) of Judgments § 24 (2) (1980). Just what factual grouping constitutes a "transaction" or what factual groupings constitute a "series," are "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.*
    As the commentary to § 24 (2) illustrates, one must apply a pragmatic standard:

> The expression "transaction, or series of connected transactions," is not capable of a mathematically precise definition; it invokes a pragmatic standard to be applied with attention to the facts of the cases. And underlying the standard is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim.
>
> ***
>
> In general, the expression connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series.

Restatement (Second) of Judgments § 24 (2) cmt. b (1980).

8

have brought his retaliation claim when he brought his *qui tam* claim?  *Should* he have brought it earlier?

Interestingly enough, both parties rely on *Pleming v. Universal-Rundle Corp.,* 142 F.3d 1354 (11th Cir. 1998) (Pleming II*)*  to support their different positions.  The plaintiff did not receive a job for which she applied.  In 1993, she filed an employment discrimination action against her employer  under Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 for race and sex discrimination. *See Pleming v. Universal-Rundle Corp.*, No. 1:94-cv-2004-RLV, slip op. (N.D.Ga. Nov. 22, 1995), *aff'd without opinion,* 100 F.3d 971 (11th Cir. 1996) (Pleming I).  During the course of litigation, in 1994, two additional positions became available.  Pleming did not apply for either of these positions.  The employer filled them with other applicants.

Although Pleming did not amend her Pleming I complaint to include additional allegations of discrimination arising out of the 1994 incidents, she described them in her briefs.  The magistrate judge referred to them in his report and recommendation.  Nevertheless, the district court granted summary judgment for the employer, finding that Pleming had failed to prove that the company's non-discriminatory explanation was pretextual.  *Id.*

Pleming filed suit again. *See Pleming,* 142 F.3d at 1354. In Pleming II she based her 42 U.S.C. § 1981 action on the 1994 job openings. On the basis of res judicata, the district court dismissed her second complaint. A panel of this circuit reversed the dismissal. It found that the summary judgment in Pleming I did not have a res judicata effect so as to bar her Pleming II claim based upon the 1994 hiring decisions, which had not occurred when the Pleming I complaint was filed. "We explained that the parties frame the scope of litigation at the time the complaint is filed and that a judgment is only conclusive regarding the matters that the parties might have litigated at that time but not regarding 'new rights acquired, pending the action which might have been, but which were not required to be litigated.'" *Id.* at 1357 (citing *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992)).

The Pleming II panel, quoting *Manning*, stated:

[W]e do not believe that the res judicata preclusion of claims that "could have been brought" in the earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action.

*Id.*

10

The real issue in Pleming II was whether the plaintiff had actually asserted her second claim in the course of briefing her first action. Miller cites Pleming II, however, for the proposition that, although his retaliation claim existed at the time he filed his *qui tam* action, the two claims are distinct. Comparing the substance of the actions, not their form, *Citibank*, 904 F.2d at 1503, his reading of the case is inapposite. Here it is undisputed that Miller's termination from Rubbermaid, the event giving rise to his retaliatory discharge claim in Rubbermaid II, *occurred more than ten months before* Miller filed his complaint in Rubbermaid I.[9] For res judicata purposes, it was in existence at the time the original complaint was filed. *Pleming,* 142 F.3d at 1360.

Indeed, then, both claims grew out of a common nucleus of operative fact: Rubbermaid engaged in illegal conduct and Miller's discovery of that conduct led to his discharge, a series of transactions closely related in time, space, and origin. *Citibank*, 904 F.2d at 1503; Restatement (Second) of Judgments § 24 (2) (1980). In terms of trial convenience, there is substantial overlap as both claims involve the

---

[9] As Rubbermaid suggests, a reasonable reading of Pleming II would be that had the plaintiff's second claim accrued prior to the filing of the first lawsuit, as is the case here, her second action would then have been barred by res judicata.

11

FCA, Miller's employment with Rubbermaid, and the same parties and witnesses. *Id.*

In addition, Miller received a bounty of $185,000 in Rubbermaid I. As the district court observed, to allow him to proceed with Rubbermaid II would permit future *qui tam* plaintiffs strategically to sever their claims in the hope of obtaining a second bite at the apple, should their first action prove unsuccessful. This is textbook res judicata.

## V.

Finding that both Miller's claim for retaliatory discharge under the FCA and his FCA *qui tam* claim arose from the same nucleus of operative fact, we conclude that the cause of action in Rubbermaid I and the cause of action in Rubbermaid II are the same for purposes of res judicata. As all four elements of res judicata are satisfied, we affirm the district court's order granting Rubbermaid's motion for summary judgment.

AFFIRMED.