**PETER COPPOLA BEAUTY, LLC, a Delaware limited liability company, Plaintiff,**

v.

**CASARO LABS, LTD., a New York limited liability company, Samuel Lubliner, an individual, and Rodney Vicarri, an individual, Defendants.**

Case No. 9:14–CV–81488.

United States District Court, S.D. Florida.

Signed June 5, 2015.

Filed June 8, 2015.

Robert Cory Sheres, Dubosar Navon, P.L.L.C., Howard D. Dubosar, The Dubosar Law Group, P.A., Boca Raton, FL, for Plaintiff.

Matthew Scott Nelles, Broad and Cassel, Fort Lauderdale, FL, Ronald E. D'Anna, McClosky D'Anna & Dieterle, L.L.P., Boca Raton, FL, for Defendants.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

KENNETH A. MARRA, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Verified Motion for Preliminary Injunction [D.E. 9]. The Court held hearings on the motion on March 30, 2015 and April 21, 2015. The Court received testimony from Mr. Yosef "Joe" Davidson, Mr. Samuel Lubliner, and Ron D'Anna, Esq. The Court has considered the exhibits admitted into evidence and the arguments of counsel and has determined the credibility of witnesses. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure (the

"Rules"), the Court shall now make its findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. This action arises from a dispute concerning the use of the trademark, "Peter Coppola New York." Plaintiff has sued Defendants for: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); (3) common law trademark infringement and unfair competition; and (4) unfair competition and deceptive trade practices under Fla. Stat. §§ 501.201 et seq.

2. Defendants challenge all of Plaintiff's claims on the basis of Rule 25(c), res judicata and general release, all of which arise in connection with a prior lawsuit brought by Plaintiff's predecessor in interest, Mr. Peter Coppola, individually, in Peter Coppola v. Casaro Labs, Ltd., S.D.Fla. Case No. 9:12–cv–81163–KAM (the "Prior Litigation").

### The Prior Litigation

3. In October 2008, Mr. Coppola and Defendant Casaro Labs, Ltd. entered into a licensing agreement whereby Defendants were authorized to manufacture and sell hair care products under the "Peter Coppola" trademarks for a period of five years, or until October 2, 2013 (the "2008 Trademark License"). [First Amended Complaint, Case No. 9:12–cv–81163–KAM, D.E. 30–3; Plf. Ex. 3].[1]

4. Following a dispute with Defendants, Mr. Coppola terminated the 2008 Trademark License effective

---

1. "Plf. Ex." refers to Plaintiff's exhibits introduced into evidence at the hearing, while "Deft. Ex." refers to Defendants' exhibits.

July 5, 2012. [First Amended Complaint, Case No. 9:12–cv–81163–KAM, D.E. 30, ¶ 23 and letter attached as D.E. 30–10; Pltf. Ex. 25, p. 12].

5. In October 2012, Mr. Coppola initiated the Prior Litigation against Defendants, asserting claims for breach of the 2008 Trademark License, trademark infringement, unfair competition, and accounting. [*Id.*]

6. On March 6, 2014, the parties to the Prior Litigation negotiated, through a series of emails between their attorneys, a settlement which included, *inter alia,* Defendants' payment of $275,000, a 16–month license agreement (commencing on June 1, 2014 and expiring on September 30, 2015) to continue using the "Peter Coppola New York" trademark, and a general release. [Report & Recommendation ("R & R"), Deft. Ex. 4, p. 3; Settlement Agreement, Deft. Ex. 6; Trademark License Agreement, Deft. Ex. 7]

7. Mr. Coppola later attempted to retreat from that agreement, and Defendants filed a Motion to Enforce. [Case No. 9:12–cv–81163–KAM, D.E. 44]

8. An evidentiary hearing on Defendants' Motion to Enforce was held before Magistrate Judge James M. Hopkins on April 17, 2014.

9. Yosef "Joe" Davidson testified at the hearing on Mr. Coppola's behalf. Mr. Davidson, who resides in New York and is Plaintiff's Chief Operating Officer, is the son of Karen Davidson, Plaintiff's co-manager. Mr. Davidson acted on behalf of Ms. Davidson relative to many of Ms. Davidson's co-management responsibilities, including liaising with Mr. D'Anna concerning the Prior Litigation. [R & R,

Deft. Ex. 4, p. 5; Trans–Pt1, 32:12; Trans., 21:20–21][2]

10. Magistrate Judge Hopkins recommended that Defendants' Motion to Enforce be granted and that Mr. Coppola be ordered to "execute the final settlement documents, including the full mutual releases and licensing agreement" contemplated by the settlement. [Deft. Ex. 4, p. 13]

11. On May 16, 2014, this Court entered an Order Affirming Magistrate Judge Hopkins' Report and Recommendation and ordered Mr. Coppola to execute the Settlement Agreement "including the full mutual releases" and new Trademark License Agreement. [Case No. 9:12–cv–81163–KAM, D.E. 62; Deft. Ex. 5, p. 6]

12. Of particular import to this case, this Court noted as follows:

This case is only about a settlement between the parties to this litigation. It is not binding on third parties *unless those third parties were in privity with the litigant or were represented by one of the parties.*

[Case 9:12–cv–81163–KAM, D.E. 62; Deft. Ex. 5, p. 5. (emphasis supplied)]. The Court added a footnote to these two sentences as follows:

A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or

---

**2.** There are two transcripts for the March 30, 2015 hearing. Because the majority of the record citations in these Findings are to the second, larger transcript, it is referred to herein as "Trans." The first, shorter transcript is referred to herein as "Trans–Pt1."

(6) a statutory scheme foreclosed successive litigation by nonlitigants. *Griswold v. Cntv. [Cnty.] of Hillsborough,* 598 F.3d 1289, 1292 (11th Cir. 2010) (citing *Taylor v. Sturgell,* 553 U.S. 880, 893–94 [128 S.Ct. 2161, 171 L.Ed.2d 155] (2008)).

### *The Settlement and Trademark License Agreements from the Prior Litigation*

13. Shortly after the Court's Order Affirming the Report & Recommendation, the parties to the Prior Litigation, namely Mr. Coppola and Defendants, executed the Settlement Agreement and Trademark License Agreement, and filed with the Court a Joint Stipulation of Dismissal "in accordance with" the Settlement Agreement. [Case No. 9:12–cv–81163–KAM, D.E. 64]

14. The Settlement Agreement provided, in pertinent part, as follows: Paragraph 3 of the Settlement Agreement, titled "Mutual General Releases," contains broad releases on behalf of the parties "and their employees, agents, officers, directors, legal representatives, partners, stockholders ... predecessors, successors in interest, *assigns,* parent companies, subsidiaries, [and] *affiliates* " releasing and forever discharging all claims "asserted or that could have been asserted in the Lawsuit, or arising out of the relationships, contracts, agreements and dealings that any of the Parties ever had, now have, or which any of them hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever, known or unknown, accrued or unaccrued, from the beginning of the world to the date of execution and exchange of this Mutual General Release." [Deft. Ex. 6, ¶ 3, emphasis supplied]

15. The Settlement Agreement also contained the following ¶ 7:

**Binding Effect.** This Agreement is intended by the Parties to be binding upon the Parties, their employees, agents, officers, directors, legal representatives, partners, stockholders ... successors in interest, *assigns,* parent companies, subsidiaries, *affiliates* and insurance carriers. [*Id.,* p. 3, emphasis supplied]

### *Mr. Coppola's assignment of his trademark to Plaintiff*

16. On or prior to May 30, 2013, during the midst of the Prior Litigation, Mr. Coppola and an attorney named Alan F. Fisher formed a Florida company called Beauty Investors Group, LLC ("BIG"). [R & R, Deft. Ex. 4, p. 2]

17. Mr. Coppola was the majority owner of BIG. [Trans., 144:15–25, 126:3]

18. Also on or prior to May 30, 2013, BIG entered into a limited liability company operating agreement ("LLC Agreement") with another entity known as The Davidson Group, LLC to form Peter Coppola Beauty, LLC, the Plaintiff in this case. The principals of The Davidson Group LLC are Joe and Karen Davidson. [R & R, Deft. Ex. 4, p. 2; Deft. Ex. 1; Trans., 21:20–21]

19. The LLC Agreement specifies an effective date of January 25, 2013 [R & R, Deft. Ex. 4, footnote 2; Deft. Ex. 1, p. 2]. The effective date was backdated to reflect that the parties had been negotiating the deal, and Mr. Coppola was being paid, since February 2013. [Trans., 92:9–15]

20. BIG was the majority owner of Plaintiff, and therefore Mr. Coppola, who was the majority owner of BIG, held the largest individual share of

Plaintiff. [Trans., 48:13; 126:3–6; 144:15–25]

21. Mr. Fisher and Ms. Davidson were designated as co-managers of Plaintiff. [Deft. Ex. 1, ¶ 6.1]

22. Mr. Coppola was designated as the Chief Executive Officer, and the parties executed an Employment Agreement employing him as such. [*Id.*, ¶ 6.1(c); Deft. Ex. 26; Trans., 141:16–142:5]

23. In conjunction with the LLC Agreement, Mr. Coppola and the newly formed Peter Coppola Beauty, LLC entered into an Intellectual Property Purchase Agreement ("IP Agreement") whereby Mr. Coppola sold to the LLC his rights in the "Peter Coppola" trademarks. [R & R, Deft. Ex. 4, p. 2; Deft. Ex. 2]

24. The IP Agreement acknowledges Mr. Coppola's Prior Litigation against Defendants [*Id.*, p. 1, 4th Whereas Clause] and also "sells, assigns and transfers" to Plaintiff, Peter Coppola Beauty, LLC, "any and all damages obtained by (Mr. Coppola) in the (Prior Litigation) that are found to accrue from and after the Effective Date." [*Id.*, ¶ 1(a) ]

25. Paragraph 3(f) of the IP Agreement, titled, "Special Matters with Respect to Litigation," states:

Should the Managers of the Purchaser (Peter Coppola Beauty) desire to discontinue the Litigation and Plaintiff (Mr. Coppola) disagrees, Alan J. Fisher, as a manager of the Purchaser, will decide in the best interests of the Purchaser whether or not to do so and under what terms if discontinued.

26. The IP Agreement contains as Exhibit A an "Intellectual Property Assignment" pursuant to which Mr. Coppola assigned his trademarks to Plaintiff. [Deft. Ex. 3]

27. In September 2013, Mr. Fisher and Mr. Davidson met with Defendants' principals, Mr. Lubliner and Mr. Viccari, in New York to discuss settling the Prior Litigation. [Trans., 48:14–18; Email from Alan Fisher dated October 23, 2013, Deft. Ex. 8] [3]

28. According to Mr. Fisher, the settlement discussions were Mr. Davidson's idea "and he met with (Defendants) in N.Y. and set out the parameters for settlement initially." [*Id.*]

29. At the meeting, Mr. Davidson asked Defendants "to come up with a dollar figure in lieu of royalty payments to extend the license agreement for an additional year and for Coppola to drop the lawsuit." [Email from Lubliner dated September 26, 2013, Deft. Ex. 20; Trans., 166:14–25, 167:21–25]

30. On October 16, 2013, Mr. Fisher emailed settlement terms to Defendants, one of which was that the "Law suit will be settled." [Deft. Ex. 21]

31. Mr. Lubliner testified that he understood Mr. Fisher and Mr. Davidson to be Mr. Coppola's representatives, but that he had "no concept whatsoever of what the makeup of this new venture was." [Trans., 178:12–15] According to Mr. Lubliner, Defendants were not told that Mr. Coppola had sold his trademarks. [*Id.*, 178:16–18] The Court finds this testimony

3. Plaintiff objects to the use of Defendant's Exhibit 8 on the grounds of attorney/client and common interest privileges. Plaintiff makes similar objections to the use of Defendant's Exhibits 11, 12, 13 and 30. The Court finds that, at least with respect to the communications reflected in these exhibits, there was no attorney/client relationship between Plaintiff and Ronald E. D'Anna. The Court also finds as to these exhibits, a common interest privilege does not apply.

credible and accepts it as true. The Court rejects Mr. Davidson's testimony to the contrary. This finding is buttressed by Magistrate Judge Hopkins' finding at the evidentiary hearing on Defendants' Motion to Enforce held on April 17, 2014, that Defendants attempted to discover any agreements that might have bound Mr. Coppola's authority or limited a potential agreement in the Prior Litigation, but Mr. Coppola "failed to produce either the LLC or IP Agreement until the day before the (evidentiary) hearing." [R & R, Deft. Ex. 4, p. 2–3].[4]

32. Mr. Coppola's attorney, Ronald D'Anna, Esq., then informed Mr. Fisher of his preference for settlement negotiations to go through him. Mr. Fisher acquiesced, stating that it was his "belief that you should handle this matter exclusively from now on." [Email from Fisher dated October 23, 2013, Deft. Ex. 8]

33. Informed of this decision by his attorneys, Mr. Lubliner advised Mr. Davidson, who responded, "Understood—all offers are officially off the table and this is out of my hands now." [Deft. Ex. 23]

34. Mr. Davidson testified that his negotiations with Defendants were limited to the issue of granting a new trademark license and not to settling the lawsuit; however, this testimony is inconsistent with several emails, including: a) Mr. Fisher's October 23rd email to Mr. D'Anna, which states that Mr. Davidson met with Defendants in New York "and set out the parameters for settlement;" [Deft. Ex. 8]; b) Mr. Fisher's October 16th email to Mr. Viccari stating, "Law suit will be settled;" [Deft. Ex. 21] and c) Mr. Davidson's own email to Mr. D'Anna dated March 19, 2014 in which he states that the settlement Mr. Coppola reached with Defendants "is not anything more than what Alan and I discussed with (Defendants) back in September. At that time we had an agreement in principle for $250,000 and were going to consider an extension for 12 months under our terms and that settlement was 6 months ago . . . ." [Deft. Ex. 30]

35. Around the time of the March 6, 2014 settlement, Mr. Fisher, co-manager of Plaintiff, "confirmed [with Mr. D'Anna] that he would approve the settlement" with Defendants that included the new trademark license agreement. [Trans., 114:6–115:4, 123:5–13, 123:23–124:9] Mr. Fisher also informed Mr. D'Anna that if there was an internal dispute between the managers of Plaintiff on whether to settle the Prior Litigation, Mr. Fisher "had the tiebreaker." [Id., 116:22–23][5] The "deal was done" with Mr. Fisher's approval. [Id., 125:9–11]

36. After the settlement had been reached in the Prior Litigation, Mr. Davidson, as reflected in an email dated March 17, 2014, spoke with Mr. D'Anna "to go over exactly what the

---

4. Magistrate Judge Hopkins detailed Defendants' efforts to discover this information earlier through a Request for Production and deposition, and Mr. Coppola's failure to disclose same. *Id.,* footnote 3. In fact, while Plaintiff purchased Mr. Coppola's trademark from him in May 2013, Plaintiff did not record the IP Assignment with the United States Trademark Office until March 25, 2014, which was several weeks after the Prior Litigation was settled. [Filed Trademark Assignment, Deft. Ex. 25; Trans., 65:11–16].

5. Mr. D'Anna had requested the LLC Agreement from Plaintiff and its New York attorney, Mr. Siegel, but they refused to provide the Agreement to him on the ground of "privilege." [Trans., 116:4–13, 124:10–125:6].

next steps are." [Deft. Ex. 19; Trans., 82]

37. Two days later, Mr. Davidson raised an objection to the settlement. [Deft. Ex. 30]

38. According to Mr. D'Anna, "the goals of Peter and the interests of the LLC are consistent and jointly served by settling the lawsuit." [Deft. Ex. 31, p. 4] He ensured that the settlement with Defendants "benefited the interests of everybody that was involved" in the LLC; "if Peter did well, the company did well." [Trans., 126–128, 150:12–14, 207:3]

39. None of Plaintiff's members ever expressed to Mr. D'Anna dissatisfaction with the adequacy of his representation of the LLC's interests. [*Id.*, 131:16–132:1, 132:20–133:3]

### Plaintiff's Assertion of a "Common Interest" with Mr. Coppola

40. Plaintiff filed written objections to Defendants' discovery requests concerning communications between Mr. Fisher and Mr. Davidson, on the one hand, and Mr. D'Anna, on the other hand, pursuant to the "common interest, joint defense, and pooled information" exceptions to the waiver of attorney client privilege. [D.E. 78, p. 2]

41. The Court conducted an *in-camera* inspection, and at the hearings on both March 30 and April 21, 2015, Plaintiff maintained its position that all correspondence between its principals and Mr. D'Anna prior to March 6, 2014 are protected under the "common interest, joint defense, and

pooled information" doctrines.[6] [Trans., 6:10–12, 193:21–194:14]

42. However, Plaintiff produced in discovery correspondence between its principals and Mr. D'Anna predating March 6, 2014. [PCB 102, 176, 219, 221, 228–31, 438] When asked about this at the hearing, Plaintiff stated that it did not believe that those communications were "confidential."

## II. CONCLUSIONS OF LAW

### Not Likely to Succeed on the Merits: Nonparty Preclusion

43. A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only if the moving party has clearly established four elements: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998).

44. The Court finds that Plaintiff is not likely to succeed on the merits of any of its claims because it is not likely to succeed on its assertion that it is not bound as a successor to Mr. Coppola relative to the Order of Dismissal stemming from the Settlement Agreement in the Prior Litigation. The Court also concludes that Plaintiff is not likely to succeed on its assertion that it was not in privity[7] with Mr.

---

**6.** This was the date that a settlement was reached in the Prior Litigation at which point Plaintiff contends that it no longer maintained a common interest with Mr. Coppola.

**7.** The substantive legal relationships justifying preclusion are sometimes collectively referred to as "privity." *See, e.g., Richards v. Jefferson County,* 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); 2 Restatement (Second) of Judgments § 62, Comment a.

Coppola and that *res judicata* does not bar its claims under the doctrine of nonparty preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 893, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).

 45. The purpose behind the doctrine of *res judicata* is that the "full and fair opportunity to litigate protects adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir.1999). A "claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.*

 46. On the present record, Defendant is likely to succeed on its assertion that the four *Ragsdale* requirements are met.

First, there was a final judgment on the merits in the Prior Litigation. The parties reached a settlement agreement and executed a stipulation of dismissal, barring a later suit on the same cause of action. *Ragsdale*, 193 F.3d at 1238.

Second, there is no dispute this Court had and has proper jurisdiction.

 Third, even though Plaintiff was not designated as a party in the Prior Litigation, it is likely that Plaintiff was in privity with Mr. Coppola and therefore was his successor in interest. "Even if not named, successors in interest are always bound by the judgment ..." *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1582 (Fed.Cir.1986); *Barker v. Jackson Nat'l Life Ins. Co.*, 163 F.R.D. 364, 366 (N.D.Fla.1995) (also citing *Kloster, supra*). This principle effectuates the doctrine of *res judicata* against successors and assigns where an interest is transferred during the prior litigation.

As to the fourth requirement, both the Prior Litigation and this matter involve the same cause of action, namely, Defendants' alleged infringement of the "Peter Coppola" trademark.[8]

 47. The Supreme Court clarified the use of nonparty preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). As a general rule, "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 2171 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). The rule against nonparty preclusion, however, is subject to six categories of exceptions. *Id.* at 2172. A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants. *See id.* at 2172–73.[9] *Griswold v. Cnty. of*

---

8. The claims in the Complaint mirror those in the Prior Litigation.

9. The exceptions are disjunctive; only one of them need apply in order for nonparty preclusion to be successfully asserted.

*Hillsborough,* 598 F.3d 1289, 1292 (11th Cir.2010).

48. In *Griswold v. County of Hillsborough,* 598 F.3d 1289 (11th Cir.2010), the Eleventh Circuit further explained that where a party assumes control over the litigation in which the prior judgment is rendered, that person "has had the opportunity to present proofs and argument" and "has already had his day in court even though he was not a formal party to the litigation." *Id.* at 1293.

49. The Court concludes that Defendant is likely to demonstrate at a final merits determination in this case that four of the six bases for application of the rule against nonparty preclusion apply to bar Plaintiff's claims.

*i) Agreement to be bound by Prior Litigation*

50. Plaintiff purchased Mr. Coppola's trademark in May 2013, but the IP Agreement was made effective January 25, 2013. Plaintiff was aware of the Prior Litigation at that time, because under the IP Agreement, Plaintiff is expressly entitled to share in any damages recovered in the Prior Litigation.

51. The IP Agreement pursuant to which Plaintiff purchased Mr. Coppola's trademark expressly acknowledges the ongoing Prior Litigation, and also transfers and assigns to Plaintiff under paragraph 1(a) of the Agreement "any and all damages obtained by (Mr. Coppola) in the Litigation that are *found to accrue* from and after the Effective Date." In other words, it is likely that Plaintiff acquiesced to Mr. Coppola's continued litigation of the case against Defendants, since it agreed that it would retain any damages "found to accrue" after the effective date. By agreeing to be bound to a finding on damages, Plaintiff effectively agreed to be bound by the Prior Litigation. The fact that the parties to the Prior Litigation settled, and there was no finding with respect to, damages does not change the fact that prior to the resolution of the case, Plaintiff agreed it would accept a proportionate share of whatever damages were determined to be found.[10]

52. In addition, under paragraph 3(f) of the IP Agreement, Plaintiff's co-managers had the right to terminate the Prior Litigation, even over Mr. Coppola's objection. This further demonstrates a sufficient interrelationship between Plaintiff and Mr. Coppola to render Plaintiff bound by the result of the Prior Litigation.

*ii) Substantive legal relationship between Plaintiff and Mr. Coppola*

53. In *Leary v. Infolink Global Corp.,* 2013 WL 943539 (S.D.Fla. March 11, 2013), this Court discussed the nonparty preclusion rule in detail. Quoting *Taylor v. Sturgell,* 553 U.S. 880, 893–95, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008), this Court, addressing the second exception, stated:

Nonparty preclusion may be justified based on a variety of preexisting substantive legal relationships between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, *preceding and succeeding owners of property,* bailee and bailor, and *assignee and assignor.* These excep-

---

**10.** Defendants paid $275,000 to Mr. Coppola under the Settlement Agreement, purportedly representing damages for trademark infringe-

ment, but Plaintiff has never sought from Mr. Coppola its proportionate share of those damages.

tions originated as much from the needs of property law as from the values of preclusion by judgment. *Leary, supra,* at *4. This exception reflects, and is consistent with, the principle. discussed above, that when there has been a transfer of interest during a lawsuit, the successor in interest, even if not named, is "always bound by the judgment." *See Kloster Speedsteel, supra, Bristol, supra.*

54. Mr. Coppola and Plaintiff are, respectively, preceding and succeeding owners of the "Peter Coppola" intellectual property. Mr. Coppola assigned the trademark to Plaintiff pursuant to an "Intellectual Property Assignment" during the pendency of the Prior Litigation. Thus, it is likely that on a final determination on the merits of this case, it will be decided that a substantive legal relationship exists between them under *Leary* and *Taylor* such that Plaintiff is precluded from asserting these claims against Defendants.

*iii) Adequate Representation*

55. In *Leary,* discussing the third exception to nonparty preclusion, this Court stated:

[I]n certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries.

*Id.* at *4.

56. The Court concludes that on a final determination on the merits of this case, it is likely that it will be determined that Mr. Coppola's interests were closely aligned with those of Plaintiff such that he adequately represented their interests in the Prior Litigation.

57. First, it is undisputed that Mr. Coppola held the largest personal share in Plaintiff. In addition, he held the position of CEO from Plaintiff's inception through February 13, 2014, at which time he entered into a Consulting Agreement pursuant to which he was designated the "ambassador" of the LLC, charged with, *inter alia,* expanding customer relationships and developing business opportunities. In the words of Mr. Davidson, Mr. Coppola was the "face of the company." Thus, it is likely that it will at the merits stage of this proceeding, it will be decided that during the Prior Litigation, Mr. Coppola was in privity with Plaintiff.

58. Second, Mr. Fisher was a co-manager of Plaintiff who had the ultimate authority under paragraph 3(f) of the IP Agreement to terminate the Prior Litigation. Mr. Fisher, however, deferred to Mr. D'Anna to "continue with your representation" in the interests of "the case and our current company." See Deft. Ex. 8

59. Mr. D'Anna, too, believed, "we are all working for a common goal for the benefit of everyone." *See* Deft. Ex. 11. The settlement, he felt, "benefited the interests of everybody that was involved" in the LLC; "if Peter did well, the company did well." *See* Deft. Ex. 31. This is consistent with Mr. Coppola's and Plaintiff's written agreement to share the damages recovered in the Prior Litigation, which also reflects that their interests were closely aligned.

60. Perhaps most telling is Plaintiff's assertion of the "common interest" and "joint defense" privileges to communications during the course of the

Prior Litigation between Mr. D'Anna and Plaintiff's principals, namely Mr. Davidson, Ms. Karen Davidson and Mr. Fisher. The "common interest" exception applies when parties have a "shared interest in actual or potential litigation against a common adversary, and the nature of their common interest is legal." *Mitsui Sumitomo Ins. Co. v. Carbel, LLC,* 2011 WL 2682958 (S.D.Fla.2011). By asserting this privilege, Plaintiff effectively concedes that its legal interests throughout the case were aligned with Mr. Coppola.

*iv) Control over the Prior Litigation*

61. Where a nonparty assumes control over the litigation in which a prior judgment was rendered, he has "had the opportunity to present proofs and argument" and has "already had his day in court even though he was not a formal party to the litigation." *Leary, supra* (citing *Taylor*).

62. Under paragraph 3(f) of the IP Agreement, Plaintiff had the ultimate control over the Prior Litigation because it could terminate it at any time. Although Plaintiff elected not to exercise that option, the record reflects numerous instances where its principals exercised control over the Prior Litigation.

63. For example, Mr. Fisher and Mr. Davidson controlled the settlement discussions that took place in September and October 2013.[11]

64. Mr. Davidson participated regularly in litigation strategy with Mr. D'Anna.

65. Perhaps most telling are the two emails that Mr. Davidson sent to Mr. D'Anna on January 2, 2014. Not only did Mr. Davidson provide advice concerning whether or not to send sub-poenas to Defendants' customers, but he did so in such a way that he identified Plaintiff with Mr. Coppola *as if they were one and the same*. For example, Mr. Davidson wrote that "*we* have a solid case" against Defendants, are Defendants going to make "*us* chase the assets," and Defendants have "until Monday to give *us* an offer *we* can accept." See Deft. Ex. 12 (emphasis supplied). And he repeatedly informed Mr. D'Anna that he did not want to lose the leverage they had by delaying the issuance of subpoenas to Defendants' customers, including "going after a big piggy bank" in Defendants' supplier. See Deft. Ex. 13. Through Mr. Davidson's instructions to Mr. D'Anna, Plaintiff had the opportunity to present proofs and arguments; it already had its day in court.

66. The Court concludes that it is likely that at a merits determination in this case, it will be decided that 4 out of the 6 bases for the application of nonparty preclusion will apply to this case, and that Plaintiff is therefore not substantially likely to succeed on the merits.

67. Having failed to show the first of the four elements necessary in order to succeed on the extraordinary and drastic remedy of a motion for a preliminary injunction, there is no further reason for the Court to consider the other elements.

### III. *CONCLUSION*

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff, Peter Coppola Beauty, LLC's,

---

**11.** As discussed above, these negotiations were not limited to a new trademark license, but rather to a global settlement of the Prior Litigation.

Motion for Preliminary Injunction **[D.E. 9]** is **DENIED.**