[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14104

Non-Argument Calendar

_____

JOSEPH BAER,
Capt.,

                                        Plaintiff-Appellant,

versus

MV AMERICANA,
ABSOLUTE NEVADA,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 3:21-cv-00465-BJD-LLL

_____

Before JORDAN, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Capt. Joseph Baer, proceeding *pro se*,[1] appeals the district court's dismissal -- pursuant to Fed. R. Civ. P. 12(b)(6) -- of Plaintiff's civil action against the M/V Americana ("Vessel") and against the Vessel's owner, Absolute Nevada, LLC ("Absolute Nevada"). In his complaint, Plaintiff sought unpaid wages under the Seaman's Act and sought the enforcement of a maritime lien against the Vessel. No reversible error has been shown; we affirm.

## I.

Briefly stated, this civil action involves a dispute about payment for repair work Plaintiff performed on the Vessel in 2019. Plaintiff says his company -- Grand Majestic Riverboat Company, LLC ("Grand Majestic") -- and Absolute Nevada were parties to a charter agreement. In October 2019, Absolute Nevada asked Plaintiff to help bring the Vessel into compliance with Coast Guard regulations. Plaintiff says he agreed to do the repair work on the

_____

[1] We read liberally briefs filed by *pro se* litigants. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). We also construe liberally *pro se* pleadings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

condition that his services would be performed personally and not in connection with Grand Majestic.

After Plaintiff began work on the Vessel, he discovered defects he believed rendered the Vessel unseaworthy. Plaintiff reported the unsafe conditions to Absolute Nevada but says his findings fell on "deaf ears." Thereafter, the relationship between Plaintiff and Absolute Nevada deteriorated. Absolute Nevada later told Plaintiff his services were no longer needed. Plaintiff disembarked the Vessel on 26 October 2019.

In November 2019, Plaintiff sent Absolute Nevada an invoice for over $17,000 for the work he performed on the Vessel. Plaintiff says the invoice was never paid. In June 2020, Plaintiff filed a "seaman's wage lien" with the National Vessel Documentation Center.

In April 2021, Plaintiff filed this civil action in the United States District Court for the Middle District of Florida. Plaintiff sought money damages and an order seizing the Vessel so that the Vessel could be sold to cover Plaintiff's damages.

The magistrate judge issued a show-cause order directing Plaintiff to show cause why Plaintiff's claims were not barred by previous litigation between Absolute Nevada and Grand Majestic in the United States District Court for the Southern District of New York ("New York Case"). As background, the magistrate judge noted that -- in January 2020 -- the New York district court entered a Stipulation and Order mandating, in pertinent part, that all claims

arising from the failed charter between Absolute Nevada and Grand Majestic be arbitrated in the pending New York arbitration proceedings. The Stipulation and Order also barred Grand Majestic from seeking arrest of the Vessel.

The magistrate judge noted further that the New York district court had issued an order in September 2020 in which the New York district court found Plaintiff in civil contempt for violating the terms of the Stipulation and Order and imposed a monetary sanction ("September 2020 Order"). The New York district court determined that -- even though Plaintiff was not a party to the New York Case -- Plaintiff was still bound by the terms of the Stipulation and Order as an "officer" of Grand Majestic.

In response to the show-cause order, Plaintiff denied that he was bound by the Stipulation and Order entered in the New York Case. Plaintiff also asserted that he performed the repair work on the Vessel personally as a contractor, separate and apart from the charter agreement between Absolute Nevada and Grand Majestic.

The magistrate judge issued a report and recommendation ("R&R"), recommending that the district court dismiss Plaintiff's complaint. The magistrate judge took judicial notice of the orders entered in the New York Case. The magistrate judge determined that Plaintiff's complaint was subject to dismissal because, "in essence, Plaintiff is attempting to litigate, in a different court, the identical matters that have already been litigated in the Southern District of New York."

Plaintiff objected to the R&R. The district court overruled Plaintiff's objections and adopted the R&R.[2] The district court observed that the New York district court had already ruled that Plaintiff was bound by a settlement agreement that prohibited Plaintiff from asserting -- outside a pending New York arbitration action -- the claims he sought to raise in this case. In the light of the New York Case, the district court concluded that Plaintiffs' claims were barred by res judicata. This appeal followed.

## II.

### A.    Magistrate Judge's Authority and Impartiality

Plaintiff first contends that the magistrate judge exceeded his authority by ruling on matters reserved typically for Article III judges. We disagree.

A district court is authorized by statute to designate a magistrate judge to hear and to determine non-dispositive pretrial matters. *See* 28 U.S.C. § 636(b)(1)(A). A district court may also designate a magistrate judge to make recommendations about the disposition of the case. *See id.* § 636(b)(1)(B).

Here, the district court exercised properly its statutory authority to designate the magistrate judge to assist in this case. The magistrate judge then acted within the scope of that designated authority when he ruled on non-dispositive pretrial matters and when

---

[2] The district court modified in part the R&R to the extent the R&R recommended retaining jurisdiction over Absolute Nevada's motion for sanctions.

he issued the R&R recommending that Plaintiff's complaint be dismissed.

We also reject Plaintiff's assertion that the magistrate judge was biased unfairly against him. As evidence of alleged bias, Plaintiff points to the magistrate judge's statements that Plaintiff was proceeding *pro se* and *in forma pauperis*. The complained-of statements characterize accurately Plaintiff's status before the district court. Nothing in the record evidences that Plaintiff was treated less favorably because of his *pro se* or *in forma pauperis* status. To the contrary, by noting that Plaintiff was proceeding *pro se*, the magistrate judge was indicating that Plaintiff's pleadings would be held to a less stringent standard and would be construed more liberally than pleadings drafted by lawyers. *See Tannenbaum*, 148 F.3d at 1263.

B.    *Motion to Disqualify Absolute Nevada's Counsel*

Plaintiff next challenges the magistrate judge's denial of Plaintiff's motion to disqualify Absolute Nevada's lawyer (J.M.) and J.M.'s law firm ("Firm"). In his motion, Plaintiff alleged that a conflict of interest existed based on Plaintiff's former relationship with the Firm. Plaintiff said the Firm represented Plaintiff in the purchase of a commercial 150-passenger vessel named the M/V Cocoa Belle: a matter Plaintiff says is "similar to this current case."

Absolute Nevada opposed Plaintiff's disqualification motion. Absolute Nevada asserted that Plaintiff failed to show a relationship between the M/V Cocoa Belle matter and the instant case

and failed to identify any information learned during the M/V Cocoa Belle matter that would now prevent the Firm from representing Absolute Nevada.

In a sworn affidavit, the Firm's bookkeeper said the Firm had no record of Plaintiff being a client of the Firm. Between 2004 and 2006, the Firm did, however, represent an entity called B&C Marine, LLC[3] concerning the purchase of the M/V Cocoa Belle. Pursuant to the Firm's document-retention policy, the paper file concerning the M/V Cocoa Belle matter was destroyed in 2019. Neither of the two lawyers who worked on the M/V Cocoa Belle matter were involved in representing Absolute Nevada in this case.

In a sworn affidavit, J.M. said he contacted the Florida Bar Ethics hotline to discuss the potential conflict asserted by Plaintiff. J.M. says the hotline advice supported the Firm's conclusion that no conflict existed under the applicable rule of professional conduct: Florida Rule of Professional Conduct 4-1.9.

The magistrate judge denied Plaintiff's motion "for the reasons stated by Defendant Absolute Nevada."

We review *de novo* a district court's interpretation and application of the pertinent Rules of Professional Conduct. *See Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1557-58 (11th

---

[3] Plaintiff says B&C Marine was a company he co-owned with his then-wife.

Cir. 1997).  We review for clear error the district court's factual findings.  *Id.*

In determining whether a conflict of interest exists between a party and an attorney or a law firm, we look to the local rules of professional responsibility and standards of conduct.  *See Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 380 F.3d 1331, 1338 (11th Cir. 2004).  "The party moving to disqualify counsel bears the burden of proving the grounds for disqualification."  *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003).

Florida Rule of Professional Conduct 4-1.9 governs conflicts of interest involving former clients.  Under Rule 4-1.9, a lawyer is prohibited from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent[.]"  Fla. Bar Code Prof. Resp. 4-1.9.  A lawyer is also prohibited from "us[ing] information relating to the representation to the disadvantage of the former client" and prohibited from "reveal[ing] information relating to the representation."  *Id.*  Commentary to Rule 4-1.9 provides that matters are "substantially related" "if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client."  *Id.*

Plaintiff has failed to satisfy his burden of establishing an impermissible conflict of interest under Florida's professional conduct rules.  Even if we accept that Plaintiff can be considered a former client of the Firm, the matter involving B&C Marine's acquisition

of the M/V Cocoa Belle was neither the same nor substantially related to Plaintiff's current claim for unpaid seaman's wages. Nor has Plaintiff identified any information the Firm might have learned during the M/V Cocoa Belle matter that could now be revealed improperly or used to his disadvantage. On this record, we see no error in the magistrate judge's denial of Plaintiff's disqualification motion.

## C.     Res Judicata

Plaintiff next challenges the district court's dismissal of his civil action. Plaintiff argues chiefly that he is not bound by the Stipulation and Order entered in the New York Case and that the services performed on the Vessel were performed personally and not in relation to the charter agreement between Absolute Nevada and Grand Majestic. Plaintiff raises no express challenge to the district court's ruling that his claims are barred by the New York Case.

We review *de novo* a district court's decision that a claim is barred by res judicata. *See Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Id.* A claim is barred by earlier litigation if these four elements are met: (1) a prior final judgment on the merits exists, (2) the prior decision was rendered by a court of competent jurisdiction, (3) the parties are identical in both suits, and (4) the same cause of action is involved in both cases. *See Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003).

Here, the New York district court's September 2020 Order constitutes a final judgment for res judicata purposes and was entered by a court of competent jurisdiction. In its September 2020 Order, the New York district court (1) granted Absolute Nevada's post-judgment motion to hold Plaintiff in civil contempt for violating the terms of the Stipulation and Order and (2) imposed a noncontingent monetary sanction against Plaintiff.[4] *See Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) ("A postjudgment order is final for purposes of [28 U.S.C. §] 1291 only if the order disposes of all issues raised in the motion."); *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 976-77 (11th Cir. 1986) (explaining that a civil contempt order that includes a noncontingent order of sanction constitutes a final appealable judgment).

The September 2020 Order also involved the same parties that are involved in this civil action: Plaintiff and Absolute Nevada. Although Plaintiff was not a named party in the New York Case, the New York district court determined that Plaintiff -- as Grand Majestic's "President, sole member, sole director, and 'sole proprietor'" -- was bound expressly by the Stipulation and Order entered in that case.

Both this civil action and the September 2020 Order also involve the same cause of action: Plaintiff's claim for unpaid wages

---

[4] The Second Circuit later affirmed the district court's September 2020 Order on direct appeal. *See Absolute Nevada, LLC v. Baer*, No. 21-50-cv, 2022 U.S. App. LEXIS 3312 (2nd Cir. Feb. 7, 2022).

21-14104                Opinion of the Court                11

under the Seaman's Act.  The New York district court found Plaintiff violated the terms of the Stipulation and Order when Plaintiff brought a claim for unpaid seaman's wages outside the pending New York arbitration proceedings and when Plaintiff filed a lien against the Vessel.

On this record, the district court committed no error in concluding that Plaintiff's claims were barred by res judicata.

AFFIRMED.[5]

---

[5] We reject Plaintiff's conclusory assertion that the district court violated his due process rights by failing to rule on his petition to vacate the Stipulation and Order, pursuant to 9 U.S.C. § 10.  The district court lacked jurisdiction to vacate a judgment entered by the New York district court.