[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13837
Non-Argument Calendar

_____

D.C. Docket No. 5:15-cv-00149-TES-CHW

DARNELL NOLLEY,

Plaintiff-Appellant,

versus

WARDEN,
Macon State Prison,
RICKY MYRICK,
Director of Investigations and
Compliance Inmate Affairs,
Macon State Prison,
LISA FOUNTAIN,
Interim Manager of Inmate Affairs
Unit, Macon State Prison,
DON BLAKELY,
Deputy Warden of Security, Macon
State Prison, et al.,
LIEUTENANT SAMUEL RIDLEY,
Macon State Prison,
LIEUTENANT DOMINICO DEMUNDO,
Macon State Prison, et al.,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(June 26, 2020)

Before JORDAN, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Darnell Nolley, a Georgia prisoner proceeding *pro se*, brought a civil rights action under 42 U.S.C. § 1983 against several prison officials. The district court rejected all of his claims, and he now appeals.

On appeal, Mr. Nolley raises several arguments. First, he contends that the district court erred in dismissing his excessive-force and medical-treatment claims after finding that he failed to exhaust his administrative remedies, and erred in dismissing his claim against one of the prison officials for failure to state a claim. Second, he claims that the district court mistakenly ruled that *res judicata* barred his current disproportionate-punishment claim under the Eighth Amendment—which is based on the conditions he experienced in administrative segregation—because he had litigated a prior § 1983 action based on substantially the same allegations against substantially the same prison officials. Third, he asserts that the district court erred in granting the remaining five prison officials summary judgment on his procedural due process claims. Fourth, he argues that the district court improperly denied his

2

motions for appointment of counsel.  Following review of the record and parties' briefs, we affirm.

# I

## A

The claims predominantly arise from an incident that occurred on October 7, 2012, while Mr. Nolley was incarcerated at Macon State Prison in Oglethorpe, Georgia.  Mr. Nolley alleges that he stuck his hand through a flap in his cell door to get the attention of Warden Gregory McLaughlin and discuss the conditions of his cell.  Warden McLaughlin then slammed the flap down on his hand "10–15 times," causing lacerations and a "visibly obvious fracture."

Mr. Nolley further asserts that Deputy Warden Don Blakely, Deputy Warden Mistie Jones, Tracy McIntyre (a unit manager at MSP), Barbara Jackson (a unit manager at MSP), Lieutenant Samuel Ridley, Lieutenant Peter Eaddie, Sergeant Anthony Cox, and Officer Lonnie Woolfork all saw what happened to him and failed to intervene or prevent Warden McLaughlin from assaulting him.  He also alleges that Physician's Assistant Jonathan Haynes and Nurse GiCarla Frazier refused to provide him with sutures or a cast, and merely poured peroxide over his hand and wrapped it in a bandage, informed him that there was nothing wrong with his hand, and later denied his request to view an x-ray that was taken.

As a result of this incident, Mr. Nolley was charged with disciplinary violations for failing to follow instructions and held in Tier II segregation. Mr. Nolley claims that he requested that the disciplinary hearing officer, Lieutenant Domenico Demundo, call various witnesses who saw the incident, but at the hearing Lieutenant Demundo failed to call any of the witnesses. Mr. Nolley contends that he was provided with an inadequately written disposition, which stated that he was found guilty based upon evidence provided at the hearing. He further alleges that Officer Lakeitha Ellison, his staff advocate, was silent for the duration of the proceeding. He says that he filed multiple administrative appeals, the first of which was denied by Warden McLaughlin, and the second of which was denied by Ricky Myrick, the director of investigations and compliance at MSP and Lisa Fountain, the interim manager of the inmate affairs unit. He asserts that, as a result of the disciplinary hearing and the denial of his appeals, his Tier II segregation was prolonged.

In his initial complaint, Mr. Nolley brought an excessive-force claim under the Eighth Amendment against (1) Warden McLaughlin, (2) Deputy Warden Blakely, (3) Deputy Warden Jones, (4) Mr. McIntyre, (5) Ms. Jackson, (6) Lieutenant Ridley, (7) Lieutenant Eaddie, (8) Sergeant Cox, and (9) Officer Woolfork. He also asserted a failure to provide adequate medical-treatment claim against (1) Physician's Assistant Haynes and (2) Nurse Frazier.

4

In addition, Mr. Nolley alleged a number of due process violations. These stemmed from his disciplinary hearing and were asserted against (1) Lieutenant Demundo and (2) Officer Ellison for finding him guilty without any evidence and for providing an inadequately written disposition. The other due process claims were against (1) Warden McLaughlin, (2) Mr. Myrick, and (3) Ms. Fountain for allegedly failing to provide him due process during his subsequent appeals.

**B**

With respect to Mr. Nolley's excessive-force and medical-treatment claims, the defendants filed a motion to dismiss and asserted an affirmative defense of failure to exhaust administrative remedies. *See* 42 U.S.C. § 1997e(a). They claimed that Mr. Nolley failed to allege that he had filed any grievances relating to the events in his complaint; although he had filed five grievances while at MSP (and other grievances after transferring prisons), none of those grievances concerned the events alleged in the complaint. In support of their motion to dismiss, the defendants attached an affidavit from Eddie Walker, who stated that (1) he was the grievance coordinator at MSP; (2) Mr. Nolley had filed five grievances while at MSP, but none involved an incident occurring on or about October of 2014; and (3) Mr. Nolley filed additional grievances after transferring prisons, but none involved an incident occurring on or about October of 2014.

5

Mr. Nolley did not respond to the motion to dismiss, and in May of 2016, a magistrate judge issued a report recommending that the district court grant the defendants' motion to dismiss as to the excessive-force and medical-treatment claims. The magistrate judge found that the Georgia Department of Corrections had an administrative process in place to address inmate grievances. Mr. Nolley, however, failed to allege or show that he had exhausted his administrative remedies as to the excessive-force and medical-treatment claims, and there was no evidence that he had filed any grievances related to the incident with Warden McLaughlin.

In his objections to the report, Mr. Nolley argued for the first time that prison personnel had prevented him from filing grievances and asserted that he had tried to file grievances before, but they were rejected by Mr. Walker. In support of his argument, he attached copies of two letters—from September of 2014 and January of 2015—that he submitted to Warden McLaughlin and explained that Mr. Walker was refusing to file his grievances. The district court, after conducting a *de novo* review of the record, found that Mr. Nolley's objections were "without merit" and dismissed the excessive-force and medical-treatment claims for failure to exhaust administrative remedies.

## C

In April of 2016, Mr. Nolley amended his complaint to add additional defendants and claims. In his amended complaint, he named the following prison

officials: (1) Trevonza Bobbitt, the Tier II segregation manager at MSP; (2) Sergeant S. Henderson; (3) Stephen Bostick, a correctional counsel at MSP; and (4) Dorian Giles, a correctional counsel at MSP.  In his new claims, Mr. Nolley alleged that in June of 2014 these prison officials violated his due process rights by placing him in Tier II segregation upon his arrival at MSP without an initial-segregation placement hearing or meaningful periodic review.

In June of 2017, Mr. Nolley amended his complaint a second time to add another defendant, Gregory Dozier, the then-Commissioner of the GDC, in his official capacity.  He also raised a new Eighth Amendment disproportionate-punishment claim, alleging that his Tier II segregation status was reviewed only once every 90 days.

Mr. Bobbitt, Sergeant Henderson, Mr. Bostick, and Mr. Giles moved to dismiss the claims against them, arguing that Mr. Nolley's due process claims regarding Tier II segregation were duplicative of a different lawsuit that Mr. Nolley had previously filed.  In *Nolley v. Nelson*, No, 5:15-CV-75, 2017 WL 4180117, at *3 (M.D. Ga. Sept. 21, 2017), the previous action, Mr. Nolley alleged that Mr. Bobbitt, Sergeant Henderson, Mr. Bostick, and Mr. Giles had violated his due process rights by placing him in Tier II segregation without an initial-segregation placement hearing.  Later in the litigation of that case, Mr. Nolley had attempted to assert a freestanding Eighth Amendment claim.  The district court in *Nelson* granted

summary judgment to the defendants and rejected the due process claims because Mr. Nolley was not subject to atypical and significant hardships giving rise to a liberty interest. *See id*.

In this case, the district court concluded that Mr. Nolley's claims against Mr. Bobbitt, Sergeant Henderson, Mr. Bostick, and Mr. Giles were duplicative of his claims in *Nelson* and dismissed the claims against them. The district court also dismissed the claim against Mr. Dozier, as well as Mr. Nolley's Eighth Amendment disproportionate-punishment claim.

In denying Mr. Nolley's motion for reconsideration, the district court explained that the Eighth Amendment disproportionate-punishment claim was properly dismissed because Mr. Nolley "had every opportunity to raise his Eighth Amendment claims against all" the defendants in *Nelson* and "[a]ny attempt to bring such claims now is barred." D.E. 167 at 7–8. The district court noted that the only remaining claims were Mr. Nolley's due process claims stemming from his disciplinary hearing against Warden McLaughlin, Mr. Myrick, Ms. Fountain, Lieutenant Demundo, and Officer Ellison.

**D**

After some discovery, Mr. Nolley moved for summary judgment on his due process claims against the remaining five defendants. Mr. Nolley attached various documents to his motion for summary judgment. For example, GDC Standard

Operating Procedure IIB02-0001, regarding inmate discipline, described disciplinary hearing procedures and stated that (1) the disciplinary hearing officer would conduct disciplinary hearings; (2) the disciplinary hearing officer would maintain a log of disciplinary hearings, containing information such as the findings made during the hearing; (3) the staff advocate would assist inmates during disciplinary procedures, ensuring that inmates understood the disciplinary process and that all due process aspects were followed; (4) the investigator would obtain written statements from all witnesses and attach the statements to the disciplinary report; (5) at the disciplinary hearing, the inmate had the right to call witnesses unless doing so would jeopardize prison security, jeopardize an individual's safety, the testimony would not be supportive of the inmate's defense, the testimony would be irrelevant, or the testimony would be cumulative of other testimony; (6) the inmate had the right to appeal the result of the disciplinary hearing; (7) the prison's warden would make the first review regarding the appeal and would consider any issue raised by the inmate in the appeal; and (8) the inmate had the right to file a second appeal, which generally went to the GDC Commissioner's Office.

Other evidence showed that (1) Mr. Nolley requested the presence of several witnesses at his hearing, (2) various officer witness statements generally did not address the incident in question or said that Mr. Nolley had refused to remove his

9

hand from a tray flap, and (3) various inmate witness statements generally indicated that Warden McLaughlin slammed the flap on Mr. Nolley's hand.

The defendants filed a response and cross-motion for summary judgment. They argued that Mr. Nolley received adequate due process at his disciplinary hearing. After the disciplinary hearing—at which he was found guilty—Mr. Nolley appealed the decision to Warden McLaughlin, who denied the appeal because he could not ascertain the "vague procedural error" that Mr. Nolley alleged, because Mr. Nolley had submitted no new evidence, and because the evidence presented was sufficient to support a finding that Mr. Nolley was guilty. Mr. Nolley, moreover, was interviewed during the investigation and received a copy of his inmate rights statement, informing him of his procedural rights in the disciplinary proceedings.

Lieutenant Demundo stated in his affidavit that he did not call witnesses because the officers' witness statements stood on their own, and the inmate witness statements were not supportive of Mr. Nolley's defense. The inmate witness statements "aligned closely" with Mr. Nolley's statement, so Lieutenant Demundo believed that Mr. Nolley could adequately present his version of events.

Officer Ellison, the staff advocate who assisted inmates during disciplinary proceedings, related in her affidavit that, prior to disciplinary hearings, she would discuss with the inmates the due process and procedural aspects of the hearing. She stated that, during a hearing, her duties were to question witnesses, advise the

10

Warden of procedural errors, and ensure that the inmate knew of his right to appeal. She said that she discussed the disciplinary report with Mr. Nolley, that he was able to advocate on his own behalf during the hearing, and that she noted no procedural errors during the hearing.

Ms. Fountain, who was the Interim Manager of the inmate affairs unit, stated in her affidavit that she was responsible for reviewing and responding to inmates' second-level disciplinary appeals. She said that she denied Mr. Nolley's appeal because it was not based on the grounds for a second appeal, as set forth in SOP IIB02-0001. Simply stated, Mr. Nolley did not submit new evidence.

The district court granted the remaining defendants' motion for summary judgment. It concluded that Mr. Nolley was afforded the minimum requirements of due process during his disciplinary hearing.

## E

Earlier in the case, Mr. Nolley had filed a motion requesting that the district court appoint counsel for him. A magistrate judge denied Mr. Nolley's motion after noting that he had "set forth the essential factual allegations underlying his claims, and that the applicable legal doctrines [were] readily apparent." D.E. 28 at 1. Thereafter, Mr. Nolley filed two motions for reconsideration in which he argued that the circumstances of his case were exceptional. The district court denied those motions for reconsideration.

11

Mr. Nolley, much later in the case, filed a fourth motion for appointment of counsel. The district court denied this motion after noting that, since the time his first motion was denied, Mr. Nolley had been successful in defending against dispositive motions and the complexity of the case had not changed.

## II

Mr. Nolley contends that the district court erred in dismissing his excessive-force and medical-treatment claims for failure to exhaust administrative remedies. He also argues that the district court erred in dismissing his claim against Mr. Dozier in his official capacity. We disagree.

## A

We review *de novo* the district court's application of 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act's exhaustion requirement. *See Higginbottom v. Carter*, 223 F.3d 1259, 1260 (11th Cir. 2000). An exhaustion defense is properly raised in a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1) because exhaustion is a matter in abatement and not generally an adjudication on the merits. *See Bryant v. Rich*, 530 F.3d 1368, 1374–76 (11th Cir. 2008). In this context, the district court may consider facts outside of the pleadings and resolve factual disputes, so long as those disputes do not decide the merits and the parties have had a sufficient opportunity to develop the record. *See id.* at 1376.

We review the district court's factual findings concerning the exhaustion requirement for clear error. *See id.* at 1377. A factual finding is clearly erroneous if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been committed. *See id.*

Under § 1997e(a), prisoners may not bring an action "until such administrative remedies as are available are exhausted." We have established a two-step process for analyzing a motion to dismiss for failure to exhaust administrative remedies. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, a district court must analyze the factual allegations in the motion to dismiss and the plaintiff's response, resolving any factual conflicts in favor of the plaintiff's version of the facts, and based on those facts determine whether the complaint should be dismissed. *See id.* If the first stage analysis does not lead to dismissal of the complaint, the court must then "make specific findings in order to resolve the disputed factual issues related to exhaustion," bearing in mind that the defendants have the burden of proving that the plaintiff failed to exhaust administrative remedies. *Id.* Then, after resolving the disputed facts, the court decides whether the prisoner has exhausted his available administrative remedies. *See id.* at 1083.

The PLRA's exhaustion requirement serves to provide prison officials the opportunity to resolve complaints internally before being subject to suit, reduce

13

litigation to the extent complaints are satisfactorily resolved, and improve the litigation that does occur by creating an administrative record. *See Jones v. Bock*, 549 U.S. 199, 219 (2007). To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison. *See id.* at 218. The prison's requirements, rather than the PLRA, dictate the level of detail necessary for proper exhaustion. *See id.*

The GDC employs the following grievance procedure. *See* GDC Standard Operating Procedure IIB05-0001 at 8. A prisoner must complete a signed grievance form legibly stating the complaint and requested relief and deliver it to a grievance counselor within ten days of the date he knew or should have known "of the facts giving rise to the grievance." *Id.* The Grievance Coordinator may waive the time limit "for good cause." *Id.* The complaint on the grievance form must relate to a single issue or incident. *See id.*

Here, the record shows that Mr. Nolley never filed a grievance regarding his excessive-force and medical-treatment incidents. In objecting to the magistrate judge's report, Mr. Nolley for the first argued that prison officials had prevented him from filing grievances. Although he raised that argument late in the litigation, the district court still considered it in its *de novo* review and found that objection to be "without merit." That finding is not erroneous.

14

The district court had a proper basis in the record to find that Mr. Nolley did not support his claim that he was prevented from filing grievances, given the many other grievances that he was able to file without issue.  Mr. Nolley argued that he sent letters to Warden McLaughlin complaining that Mr. Walker had prevented him from accessing the grievance system, but those letters were dated in September of 2014—before his excessive-force and medical-treatment claims arose in October of 2014—and in January of 2015—several months after his deadline to file grievances expired.  Additionally, the January 2015 letter did not refer to the excessive-force or medical-treatment claims, and when Mr. Nolley filed his first grievance in March of 2015 through Warden McLaughlin, the receipts Mr. Nolley received did not indicate that the grievances that he had filed were about those claims.  Although Mr. Nolley could have filed grievances regarding his claims, and the time limit could have been waived for good cause, Mr. Nolley never sought to submit them.

Because the record reflects that Mr. Nolley failed to file grievances regarding the excessive-force and medical-treatment claims, he did not exhaust available administrative remedies.  The district court therefore did not err in dismissing those claims.

**B**

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir.

15

2004). We accept the allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *See id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether a *pro se* plaintiff states a viable claim, we liberally construe the pleadings. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (stating the rule in the context of a § 1983 action that was *sua sponte* dismissed under 28 U.S.C. § 1915A).

With regards to Mr. Nolley's claim against Mr. Dozier, we note that a supervisor can be held liable for his subordinates' constitutional violations when he personally participates in the violations or where there is a causal connection between his actions and the constitutional deprivation. *See Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). Here, however, Mr. Nolley failed to state a plausible claim for relief against Mr. Dozier because he (1) did not allege any facts suggesting that Mr. Dozier was personally involved in the alleged violation of his constitutional rights; and (2) did not allege facts suggesting a causal connection between Mr. Dozier's actions and the violation of his rights. Moreover, on appeal, he only argues that Mr. Dozier was broadly responsible for GDC operations without referencing any facts suggesting that Mr. Dozier is somehow liable. We thus agree with the district court's dismissal of Mr. Nolley's claims against Mr. Dozier.

16

## III

Mr. Nolley next argues that the district court erred in ruling that his Eighth Amendment disproportionate-punishment claim was barred due to claim preclusion/ *res judicata*. We disagree.

Claim preclusion is also referred to as *res judicata*. *See Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990). Whether *res judicata* bars a claim is a question of law that we review *de novo*. *See Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

*Res judicata* applies if "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* With respect to the first factor, "[a] dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Citibank, N.A.*, 904 F.2d at 1505. A grant of summary judgment is also a final judgment on the merits for purposes of *res judicata*. *See Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000). Additionally, with respect to the fourth factor, we have held that "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same

17

claim or cause of action for purposes of *res judicata*." *Citibank, N.A.*, 904 F.2d at 1503 (citation and quotation marks omitted).

The doctrine of *res judicata* "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale*, 193 F.3d at 1238. The purpose behind the doctrine is that the "full and fair opportunity to litigate protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (quotation marks and brackets omitted).

Generally, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (quotation marks omitted). There are six exceptions to this general rule against non-party preclusion, two of which are relevant here: (1) a "substantive legal relationship existed between the person to be bound and a party to the judgment;" and (2) "the nonparty was adequately represented by someone who was a party to the suit." *Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010). Here, the district court properly dismissed Mr. Nolley's disproportionate-punishment claim based on the doctrine of *res judicata*.

18

First, the district court in *Nelson* was a court of competent jurisdiction. It clearly had jurisdiction over Mr. Nolley's federal claims.

Second, there was a final judgment on the merits in *Nelson*, as the district court granted summary judgment to the defendants on Mr. Nolley's due process claims, and that order was the final dispositive order in the case. *See Nelson*, 2017 WL 4180117, at *3.

Third, the parties in *Nelson* and in this case share a substantial legal relationship, which makes them identical for *res judicata* purposes. In the instant suit, Mr. Nolley named all the same parties he named in *Nelson*—Warden McLaughlin, Mr. Bobbitt, Sergeant Henderson, Mr. Bostick, and Mr. Giles. Although Mr. Nolley named several additional defendants in the instant suit who were not named parties in *Nelson*, all of those defendants worked for the GDC, which created a substantial legal relationship such that the parties were essentially the same. Further, the new defendants in the instant suit were already adequately represented during the *Nelson* litigation because their potential legal defense would have been identical to that of the parties in *Nelson*, and all of Mr. Nolley's claims in *Nelso*n were resolved when summary judgment was granted. *See id.*

Fourth, the same cause of action was involved in both cases. In *Nelson*, Mr. Nolley alleged due process violations relating to the conditions of his Tier II segregation and his initial placement there without an initial-segregation placement

19

hearing.   And he later argued that he had alleged sufficient facts to create a freestanding disproportionate-punishment claim under the Eighth Amendment.  In this case, Mr. Nolley alleged nearly identical conditions of Tier II segregation and claimed that those conditions violated his Eighth Amendment rights.  Both *Nelson* and the instant case had the same cause of action for purposes of *res judicata* because they arose from the same nucleus of operative fact and were based on the same factual predicate.   Additionally, because Mr. Nolley could have brought the disproportionate-punishment claim in *Nelson* to avoid litigating multiple lawsuits and to conserve judicial resources, the purpose behind *res judicata* weighs in favor of treating the claims that Mr. Nolley alleged between the two suits as the same.

We therefore conclude that the district court did not err in dismissing Mr. Nolley's disproportionate-punishment claim under the Eighth Amendment based on *res judicata*.

**IV**

Mr. Nolley argues that the district court erred in granting summary judgment in favor of the remaining defendants on his procedural-due-process claim. Specifically, he argues that Lieutenant Demundo and Officer Ellison denied his request to call witnesses and that he was not provided with a written statement containing a meaningful explanation of why he was found guilty.   He further contends that Warden McLaughlin, Mr. Myrick, and Ms. Fountain violated his due

20

process rights by failing to correct on appeal the errors stemming from his disciplinary hearing. Again, we disagree.

We review a district court's grant of summary judgment *de novo*. *See Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990). The question is whether the evidence, when viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *See id.* "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

A plaintiff is entitled to redress under § 1983 if a person acting under color of state law deprived him any right, privilege or immunity protected by the Constitution or laws of the United States. The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "In [our] circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest, (2) state action, and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

21

We have held that "[t]he minimum requirements of due process for prisoners facing disciplinary action . . . are (1) advance written notice of the charges, (2) a written statement of the reasons for the disciplinary action taken, and (3) the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).  The Supreme Court has stated that the rationale behind providing a prisoner with a written statement is to ensure that subsequent reviews of the disciplinary hearing are fair, and the prisoner is able to "propound[ ] his own cause to or defend[ ] himself from others." *Wolff v. McDonnell*, 418 U.S. 539, 565 (1974). Where a prison official does not call witnesses, the official may be required to explain the reason why witnesses were not allowed to testify. *See Ponte v. Real*, 471 U.S. 491, 497 (1985).  So long as the provided reasons are "logically related to preventing undue hazards to institutional or correctional goals, the explanation should meet the due process requirements." *Id.* (quotation marks omitted).  The Supreme Court has noted that "it would be useful for [a prison official] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566.  In reviewing the process that a prisoner received, we are not required to independently review the entire record or weigh the evidence against the inmate, as the relevant question is whether there is any evidence in the record that could support the conclusion reached

22

by the disciplinary official.  *See O'Bryant v. Finch*, 637 F.3d 1207, 1213–14 (11th Cir. 2011).[1]

Mr. Nolley received adequate due process during his disciplinary proceedings. The reasons are as follows.

First, the record demonstrates that Mr. Nolley was informed of the charges against him.  He was interviewed as part of the disciplinary investigation process and was provided a copy of his inmate rights statement informing of him of his rights during the disciplinary hearing.  This satisfied the first requirement of due process.

Second, Lieutenant Demundo provided Mr. Nolley with a written statement explaining the result of the disciplinary proceedings, which satisfied the second requirement of due process.  Although the written statement did not specify what evidence was considered at the disciplinary hearing or the particular reasoning behind Lieutenant Demundo's finding of guilt, the written document indicated that Mr. Nolley was found guilty based upon evidence presented at the hearing; Lieutenant Demundo attested that he had read the evidence against Mr. Nolley, who was provided an opportunity to present a defense; and the witness statements that Lieutenant Demundo had considered were present in the record.  Thus, Mr. Nolley

---

[1] The district court ruled that Mr. Nolley did not have a protected liberty interest in being placed in Tier II segregation.  Because we conclude that Mr. Nolley received adequate due process at his disciplinary hearing, we assume without deciding that Mr. Nolley had a protected liberty interest. *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1303 (11th Cir. 2007) (explaining that a district court "judgment can be affirmed on appeal 'on any ground that finds support in the record'").

23

was given a written statement informing him of the reasons for the disciplinary action taken. Furthermore, the rationale behind providing a written statement was satisfied because the witness statements that were considered at the hearing were attached to the disciplinary investigation report, and because Mr. Nolley was aware of the evidence on which he was found guilty.

Third, although Mr. Nolley was not able to call witnesses at his disciplinary hearing, Lieutenant Demundo did consider the inmates' statements that supported his claims and decided that they were close enough to his version of events that their testimony could be considered cumulative. Lieutenant Demundo's reasons for not calling witnesses—that written officer statements "st[ood] on their own," and that inmate statements were "non-supportive"—were sufficient to avoid a violation of due process because they tracked the examples in *Wolff* and GDC Standard Operating Procedure IIB02-0001, and logically the latter could be found to be cumulative of Mr. Nolley's own version of events. And although the inmates could have provided corroboration for Mr. Nolley, the record indicates that Lieutenant Demundo considered their statements. *See Wolff*, 418 U.S. at 566.

Moreover, Mr. Nolley was provided other due process protections. He was given a staff advocate, Officer Ellison, to monitor the proceeding and prevent procedural violations. Officer Ellison discussed with Mr. Nolley the hearing's due

24

process requirements and procedural aspects and looked for procedural errors during the hearing.

As it pertains to Mr. Nolley's appeals from his disciplinary hearing decision, the record shows that Warden McLaughlin denied his initial appeal because he concluded (as we do now) that there was no due process error, that Mr. Nolley did not submit new evidence, and that the  evidence at the hearing was sufficient to support Lieutenant Delmundo's decision.  Ms. Fountain denied the second appeal because it was not based on the grounds for a second appeal, as set forth in SOP IIB02-0001, and Mr. Nolley did not submit new evidence.

The record shows that Mr. Nolley received adequate due process with respect to his disciplinary hearing and his subsequent appeals.  The district court did not err in granting summary judgment in favor of the remaining defendants.[2]

## V

Mr. Nolley asserts that the district court abused its discretion in denying his several motions to appoint counsel.  We review the denial of a motion for appointment of counsel for an abuse of discretion.  *See Bass*, 170 F.3d at 1319.  "A plaintiff in a civil case has no constitutional right to counsel."  *Id.* at 1320.  Appointment of counsel in a civil case is appropriate in exceptional circumstances,

---

[2] Because we conclude that Mr. Nolly received adequate due process at his disciplinary hearing and subsequent appeals, we do not address qualified immunity.

25

such as when the facts and legal issues are so novel and complex as to require the assistance of a trained practitioner. *See Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993). "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court." *Id.* "Where the facts and issues are simple," typically a *pro se* litigant "will not need such help." *Id.*

Here, although Mr. Nolley brought multiple claims and sued a number of defendants, the facts were not so novel or complex so as to require counsel. Mr. Nolley was capable of adequately presenting his case because, over the course of proceedings in the district court, he filed a number of motions, responded to the defendants' motions, objected to reports, engaged in discovery, and successfully defended against several dispositive motions. Although it may have been helpful for Mr. Nolley to have counsel—and there may have been a number of attorneys who would have been willing to assists him *pro bono*—we conclude that the district court did not abuse its discretion in denying Mr. Nolley's several motions for counsel.

## VI

For the reasons set out above, we affirm.

**AFFIRMED.**