[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12985

_____

JEFFERY D. MILNER,

Plaintiff-Appellant,

*versus*

BAPTIST HEALTH MONTGOMERY, PRATVILLE BAPTIST,
AND TEAM HEALTH,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:20-cv-00261

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Dr. Jeffery D. Milner brought a *qui tam* action under the False Claims Act (FCA) to recover for an alleged fraud committed by the Defendants against the United States. According to Milner, while he worked as a physician at a hospital owned and operated by the Defendants, he discovered that the Defendants were overprescribing opioids to patients and fraudulently billing the Government for them. Milner alleges that he was fired as retaliation for whistleblowing after he reported the overprescription to his superiors. In an earlier lawsuit, Milner brought an FCA retaliation claim against the Defendants for his termination, but that lawsuit was dismissed with prejudice for failure to state a claim. In this case, the district court dismissed Milner's *qui tam* action as barred by res judicata because of his earlier retaliation action, relying on our decisions in *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999) and *Shurick v. Boeing Co.*, 623 F.3d 1114 (11th Cir. 2010). Milner appealed. After careful review and with the benefit of oral argument, we affirm.

## I. FACTUAL & PROCEDURAL BACKGROUND[1]

From 2014 until 2017, plaintiff-relator Dr. Jeffery D. Milner was a physician at a hospital in Prattville, Alabama owned and operated by the Defendants. While working in this capacity, Milner alleges that he discovered the Defendants were forcing their physicians to overprescribe opioids and billing Medicare and Medicaid for the same. In particular, Milner alleges that "the Prattville ER was an opiate den" with "about twenty to twenty-five percent of visits involv[ing] opioids." Complaint at 13. "Team Health," he says, "billed opioid visits and was able to increase health service charges and payments if the visit required opiates." *Id.* "This 'upcharge' practice resulted in the hospital getting paid and reimbursed for unnecessary visits." *Id.* Overall, Milner asserts that the Defendants fraudulently billed the Government about $4,000,000 each year.

Milner also claims that "[t]he hospital and emergency administration punishe[d] ER doctors who d[id] not meet opiate drug demands and show substantial upcharges related to opioid visits." *Id.* at 13. For example, Milner alleges that, when he spoke with his superiors about the overprescription practice, they said that "they have to keep the drug addicts and administration happy and [that] he should give them a little something." *Id.* at 17. Ultimately,

---

[1] Consistent with the standard of review for motions to dismiss, we take our factual summary from the allegations in Milner's complaint and construe the allegations in the light most favorable to the plaintiff. *See Newbauer v Carnival Corp.*, 26 F.4th 931, 933 n.1 (11th Cir. 2022).

Milner claims, he was terminated on December 18, 2017, as retaliation for his whistleblowing.

On December 17, 2019, Milner filed a lawsuit against the Defendants in the U.S. District Court for the Northern District of Alabama. In that action, Milner sought relief for retaliation under the FCA, in addition to relief on other grounds. The district court granted the Defendants' motion to dismiss the complaint for failure to state a claim and dismissed the case with prejudice. In particular, the district court determined that Milner had not alleged that he had engaged in protected conduct under the FCA, and even if he had, Milner also failed to demonstrate the plausibility of his allegation that his termination was due to protected conduct occurring three years earlier.

On April 16, 2020, Milner filed this *qui tam* action under seal in the U.S. District Court for the Middle District of Alabama. On September 12, 2022, the United States declined to intervene and requested unsealing the complaint except for documents related to its investigation. Four days later, the district court unsealed the complaint and ordered Milner to serve it on the Defendants. The Defendants moved to dismiss Milner's complaint as barred by res judicata, among other things. On September 6, 2023, the district court dismissed the case with prejudice as to Milner on res judicata grounds and without prejudice as to the United States. "*Ragsdale* and *Shurick*," the district court said, "compel this outcome" because those cases demonstrate that an employment retaliation

action and an FCA *qui tam* action share the same parties and the same cause of action.

On September 12, 2023, Milner appealed.

## II. STANDARD OF REVIEW

We review *de novo* a district court's decision to dismiss an action due to res judicata. *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010); *Ragsdale*, 193 F.3d at 1238. For a motion to dismiss, we "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir.2006)). "The party asserting res judicata bears the burden of 'show[ing] that the later-filed suit is barred.'" *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1327 (11th Cir. 2024) (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)) (alteration in original).

## III. ANALYSIS

"Res judicata prevents plaintiffs from bringing claims related to prior decisions when 'the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action.'" *Id.* at 1324 (quoting *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020)). Because Milner and the Defendants dispute only whether the third and fourth elements are met, we address only these elements below.

### 1. Do Milner's two lawsuits involve the same parties?

For res judicata, "[a] party is one who is both named as a party to the action and subjected to the court's jurisdiction." *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1471 (11th Cir. 1986) (citing Restatement (Second) of Judgments § 34 (Am. L. Inst. 1980)).  More specifically, "[a] party … includes 'all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies.'" *In re Just. Oaks II, Ltd.*, 898 F.2d 1544, 1550–51 (11th Cir. 1990) (quoting 1 A. FREEMAN, A TREATISE OF THE LAW OF JUDGMENTS § 430, at 936–37 (5th ed. 1925)).  The presence of additional parties in either the first or second action is irrelevant to whether res judicata applies between two opposing parties in consecutive lawsuits.  *See Mann v. Palmer*, 713 F.3d 1306, 1311 (11th Cir. 2013) ("Mann argues that the cases do not involve the same parties because his first action named defendants who are not defendants in this action, but that argument fails.  For the purpose of res judicata, identity of parties is satisfied if the parties to the second action were either parties to the first action or in privity with those parties.").

It is not disputed that the Defendants are parties here and were parties in Milner's earlier retaliation lawsuit.  The only question, therefore, is whether Milner, who was a party in his earlier lawsuit, is also a party here because of his status as a relator.

In *Ragsdale*, we faced the "mirror image" of this case.  There, the plaintiff first brought an FCA *qui tam* action and later an FCA

23-12985                 Opinion of the Court                 7

retaliation action against his employer.  We held that the plaintiff was the same party in both cases.  193 F.3d at 1238 ("[T]he parties are identical.").  This was so even though the plaintiff "contend[ed] that after the [G]overnment intervened in [the earlier FCA *qui tam* action] and assumed primary control, he was merely a relator, not a true party." *Id.* at 1239 n.7.  "The Act makes clear," we said, "that with certain exceptions not relevant here, relators have unrestricted participation in the litigation." *Id.*  Such participation was sufficient to make the plaintiff a party in his earlier FCA *qui tam* action and, thus, to establish an identity of parties for purposes of his later FCA retaliation action.

Given our categorical holding in *Ragsdale*, we can dispose of Milner's argument that, while his retaliation lawsuit was brought on his own behalf in his personal capacity, this lawsuit is brought only on behalf of the United States because he is merely the "statutorily designated agent of the United States."  Appellant's Br. at 11, 13 (quoting *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000)).[2]  As the Defendants note, our

---

[2] Milner ignores the context of this statement from *Stevens*, in which the Court said:

> It would perhaps suffice to say that the relator here is simply the statutorily designated agent of the United States, *in whose name* . . . the suit is brought—and that the relator's bounty is simply the fee he receives *out of the United States' recovery* for filing and/or prosecuting a successful action on behalf of the Government.  This analysis is precluded, however, by the fact that the statute gives the relator himself an interest *in the*

8                    Opinion of the Court                    23-12985

reasoning in *Ragsdale* applies with even more force here: if the *Ragsdale* plaintiff-relator was a party in a case in which the United States intervened, then Milner must be a party in a case in which the United States did *not* intervene. Thus, under *Ragsdale*, Milner is a party in his personal capacity in this *qui tam* action just as he was in his earlier retaliation action.

Nevertheless, Milner tries to avoid *Ragsdale* in two ways.

First, Milner claims that *Ragsdale*'s decision regarding the identity of parties was not, in fact, part of the holding of that case. Instead, he argues that the parties made a settlement agreement in the earlier lawsuit that barred a subsequent suit and, thus, made our ruling on the issue dicta. In other words, Milner claims that we decided an unnecessary issue because the settlement agreement controlled the outcome. But the *Ragsdale* plaintiff *himself* argued that the settlement agreement did not control because he was not acting in his personal capacity in the earlier FCA *qui tam* action. 193 F.3d at 1238 n.7 ("[The plaintiff] contends that after the [G]overnment intervened in [the earlier FCA *qui tam* action] and assumed primary control, he was merely a relator, not a true party."). This required us to determine whether the plaintiff was, in fact, the same party in both cases for the purpose of res judicata. Thus, our

------

*lawsuit,* and not merely the right to retain a fee out of the re-
covery.

529 U.S. at 772 (internal citations omitted). Thus, the Court actually rejected what Milner claims it endorsed—the idea that a relator is "simply" an agent of the United States.

decision regarding the identity of parties was part of the holding. *See United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) ("The holding of a case comprises both the result of the case and those portions of the opinion necessary to that result." (quoting *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) (internal quotation marks omitted))).

Second, Milner attempts to distinguish *Ragsdale* by arguing that it did not consider the United States' interest in "passive recovery." Milner claims that, if he is barred from proceeding, the United States would lose the benefit of passively recovering 70% of any judgment against the Defendants without having to litigate. He also argues that the United States could not passively recover via the efforts of other relators because their actions would be barred by the public disclosure of the alleged fraud under 31 U.S.C. § 3730(e)(4)(a). And the Government itself could be barred, Milner claims, if dismissal of this case binds the Government.

For support, Milner primarily relies on the Seventh Circuit's decision in *United States ex rel. Lusby v. Rolls-Royce Corp.*, which expressly disagreed with *Ragsdale* and held "that the resolution of personal employment litigation does not preclude a *qui tam* action." 570 F.3d 849, 852 (7th Cir. 2009). In *Lusby*, the Seventh Circuit stated that "[t]he special status of the United States counsels against reflexive transfer of rules of preclusion from private to public litigation." *Id*. Because "[t]he United States is entitled to at least 70% of any recovery, even when it does not intervene," the Seventh Circuit reasoned, "[i]t would be inappropriate to snuff out that federal interest just because a potential relator thoughtlessly omitted a *qui*

*tam* claim from a personal suit." *Id. Lusby* also addressed the United States' ability to pursue an FCA case on its own, reasoning that the United States would necessarily be barred by res judicata because the Supreme Court had indicated that "the United States is bound by the judgment in all FCA actions regardless of its participation in the case." *Id.* at 853 (quoting *United States ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 936 (2009)).

For two reasons, we must reject Milner's attempt to avoid *Ragsdale* via *Lusby*.

First, as the Defendants note, "Milner's attempts to 'distinguish' *Ragsdale* are really just attempts to convince this Court that *Ragsdale* was wrongly decided." But under our prior-panel-precedent rule, we cannot ignore *Ragsdale* as a panel even if that decision did not consider some arguments that Milner now advances. *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) ("[U]nder this Court's prior-panel-precedent rule, 'a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.' We have held that 'a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel.'" (first quoting *United States v. Archer,* 531 F.3d 1347, 1352 (11th Cir. 2008); then quoting *Tippitt v. Reliance Standard Life Ins. Co.,* 457 F.3d 1227, 1234 (11th Cir. 2006))). Thus, *Ragsdale* governs the instant case and bars Milner's argument.

Second, even if we were not bound by *Ragsdale* and were to consider Milner's argument, dismissal of this case on account of res judicata would not imperil the United States' interest in passive recovery or prohibit it from pursuing its own action to recover for fraud. While Milner would be barred from pursuing recovery, other relators need not be affected by the public disclosure bar, if the Government so chooses. *See* 31 U.S.C. § 3730(e)(4)(a) ("The court shall dismiss an action or claim under this section, *unless opposed by the Government* ….") (emphasis added). And a future suit by the United States to pursue this alleged fraud also would not be barred. Because it has not intervened, the United States is not a party to the instant case. *See Eisenstein*, 556 U.S. at 931 ("Although the United States is aware of and minimally involved in every FCA action, we hold that it is not a 'party' to an FCA action for purposes of the appellate filing deadline unless it has exercised its right to intervene in the case." (footnote omitted)); *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 430 (2023) ("When the Government has chosen not to intervene in a *qui tam* suit, it is (by definition) not a party."); *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1309–10 (11th Cir. 2021) ("[T]he United States is not a formal party to a non-intervened qui tam action …." (citing *Eisenstein*)). So, if there is a future case regarding this alleged fraud and the United States appears as a party, that would be the first case in which the United States appears in this capacity, and res judicata cannot bar a party that has not previously been a party or in privity with a party to the same cause of action.

Our understanding here does not conflict with *Eisenstein*. In that case, the Supreme Court generally indicated "that the United States is bound by the judgment in all FCA actions regardless of its participation in the case." *Eisenstein*, 556 U.S. at 936. Milner takes this to mean that a finding of res judicata here would itself be a final judgment that bars the United States in future actions under res judicata. But *Eisenstein*'s statement does not bear the weight of Milner's interpretation. In *Eisenstein*, the district court dismissed the claim on the merits. *Id*. at 930; *see also United States ex rel. Eisenstein v. City of New York*, No. 03 Civ. 413, 2006 WL 846376 at *4–*5 (S.D.N.Y. Mar. 31, 2006) (finding that the plaintiffs failed to state a claim under the FCA because they failed to adequately plead allegations of fraud, intentional misrepresentation, or concealed information). Here, the doctrine of res judicata bars Milner—not the United States—from bringing the claim. While the United States is bound by that judgment, the judgment is limited to barring Milner from filing the claim and does not prevent the United States from pursing its own FCA claim against the Defendants.

Thus, if Milner's claim is barred by res judicata, the district court was correct to dismiss the complaint without prejudice to the United States. Indeed, we have already sanctioned this practice ourselves. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015) (affirming dismissal with prejudice of relator's FCA *qui tam* action under Rule 12(b)(6) and modifying judgment to be without prejudice to the United States).

23-12985                Opinion of the Court                13

For the reasons above, we hold that Milner's instant FCA *qui tam* action shares the same parties with his earlier FCA retaliation action for res judicata purposes.  We now turn to the fourth element of res judicata.

**2.  Do Milner's two lawsuits involve the same cause of action?**

"'The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case.  In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form.'  In other words, a court 'must look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in' the first cause of action.  'It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same "claim" or "cause of action" for purposes of res judicata.'" *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (alteration in original) (first quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (citations and footnote omitted); then quoting *S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta*, 833 F.2d 1477, 1482 (11th Cir. 1987); then quoting *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir. 1983), *cert. denied*, 465 U.S. 1029 (1984)).  Also relevant is "whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." *In re Piper Aircraft Corp.*, 244 F.3d at 1296.

Milner argues that his "first suit involved his right not to be retaliated against in his employment for investigating or reporting a potential *qui tam* suit, while the instant *qui tam* suit involves the United States' right not to pay false claims." His lawsuits involved different "factual predicate[s]," he says, because the "employment action focused on the reasons [he] was terminated for reporting on opioid overprescription and abuse," while "[the] *qui tam* suit … hinges on [the] Defendants' intentions while submitting opioid claims to the Government and whether the prescriptions were medically necessary."

Milner's argument is explicitly foreclosed by *Ragsdale*. In that case, the question presented was: "Do [the plaintiff's] FCA retaliatory discharge claim against Rubbermaid and his *qui tam* claim under the FCA against Rubbermaid epitomize the same cause of action?" 193 F.3d at 1238–39. Like Milner here, the plaintiff in *Ragsdale* argued that the causes of action were different because "the issue [in his retaliation lawsuit] … [was] not whether the [G]overnment was overcharged by Rubbermaid but whether he was fired by Rubbermaid for questioning its pricing practices." *Id.* at 1237. We rejected that argument: "[B]oth claims grew out of a common nucleus of operative fact: Rubbermaid engaged in illegal conduct and [the plaintiff's] discovery of that conduct led to his discharge, a series of transactions closely related in time, space, and origin." *Id.* at 1240.

In *Shurick*, 623 F.3d 1114, the plaintiff argued that *Ragsdale* did not mean that his retaliation lawsuit and FCA *qui tam* lawsuit

were the same cause of action because, unlike the claims in *Ragsdale*, his retaliation claim was under state law rather than the FCA. But we held that such a difference was "purely cosmetic." *Id*. at 1117. "What mattered in [*Ragsdale*] was that 'Rubbermaid [had] engaged in illegal conduct[,] and [the plaintiff's] discovery of that conduct led to his discharge[:] a series of transactions closely related in time, space, and origin.'" *Id*. (quoting *Ragsdale*, 193 F.3d at 1240 (second and following alterations in original)).

Indeed, the elements of the claims need not be the same; what matters is whether they arise from a common nucleus of operative fact. *See, e.g.*, *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990) ("*Res judicata* applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact."); *Rodemaker*, 110 F.4th at 1330 ("Factual allegations do not need to be identical to arise out of the same nucleus of operative fact. The nucleus is the core, not the core and every layer, crack, and fissure."); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1188 (11th Cir. 2003) ("[T]he fact that the elements of proof in the context of the ADA claim differ from those at issue in Davila's breach of contract claim is not a basis on which we may hold res judicata to be inapplicable.").

Since we have already determined in *Ragsdale* and *Shurick* that an employment retaliation action and an FCA *qui tam* action generally arise from the same nucleus of operative fact, Milner cannot escape the same conclusion here. As the Defendants rightly observe, Milner's lawsuits "involve the same time period (2014-

2017), the same space (the [Defendants'] hospital[]), and the same basic factual predicate (Milner's reporting of opioid overprescriptions and overbilling for those medically unnecessary prescriptions)." Thus, they involve the same cause of action.

Nevertheless, Milner argues that his case is not of the kind typically barred by res judicata. Since he filed his *qui tam* suit four months after his retaliation suit and five months before that suit was dismissed, Milner argues that he is not splitting claims to have "two bites at the apple." The plaintiff in *Shurick* made a similar argument: "[B]ecause he filed his lawsuits at the same time, Shurick argues that he avoided the 'textbook res judicata' situation we considered in [*Ragsdale*], where our primary concern was preventing *qui tam* plaintiffs from strategically severing their claims 'in the hope of obtaining a second bite at the apple should their first action prove unsuccessful.'" *Shurick*, 623 F.3d at 1117–18 (quoting *Ragsdale*, 193 F.3d at 1240). But we noted that, "'for res judicata purposes, claims that could have been brought are claims in existence at the time the original complaint [was] filed.'" *Id.* at 1118 (quoting *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir. 1998) (alteration in original) (quotation marks omitted in original). Accordingly, we held that, because "Shurick was fired months before filing either of his lawsuits against Boeing," "a final judgment in one action precluded further litigation in the second." *Id.* The same reasoning applies here. Since Milner was also fired before filing either his retaliation lawsuit or his *qui tam* lawsuit, both claims were in existence at the time the original complaint was filed, so a final judgment in one precluded litigation of the other.

Lastly, Milner objects that his two actions practically could not have been brought together.  The problem, he says, is that Fed. R. Civ. P. 4(m) required him to serve the Defendants within 90 days of filing his complaint, but 31 U.S.C. § 3730(b)(2) required him not to serve the Defendants until the United States decided whether to intervene, which, here, was longer than 90 days.  *See also Lusby*, 570 F.3d at 852 ("The procedural differences between personal and *qui tam* litigation are so great that it is often impractical to pursue both claims in one suit—and sometimes impossible, as when the United States takes more than [90] days to decide whether to intervene ….").

This argument fails, however, because Fed. R. Civ. P. 4(m) and 31 U.S.C. § 3730(b)(2) are not incompatible, as Milner and *Lusby* suggest.  First, the FCA tolls the 90-day deadline in Fed. R. Civ. P. 4(m).  31 U.S.C. § 3730(b)(2) ("The complaint shall be filed in camera, shall remain under seal for at least 60 days, and *shall not be served on the defendant until the court so orders.*" (emphasis added)).  As the Defendants note, multiple courts have held that Rule 4(m)'s time period does not start until the complaint is unsealed.  *See United States ex rel. Weiner v. Siemens AG*, 87 F.4th 157, 161 (2d Cir. 2023) ("… Congress provided unambiguously [in 31 U.S.C. § 3730(b)(2)] that a relator may not lawfully serve process without a court order authorizing service.  Thus, it is only when a district court expressly 'orders' a relator to serve a defendant that the Rule 4 period begins." (footnote omitted)).  Second, Fed. R. Civ. P. 4(m) makes an exception to the 90-day service requirement for good cause.  *See* Fed. R. Civ. P. 4(m) ("But if the plaintiff shows good

cause for the failure, the court must extend the time for service for an appropriate period.").  And not being able to serve a complaint because of a statutory bar likely constitutes good cause.

Thus, for the reasons above, we hold that Milner's instant FCA *qui tam* action shares the same cause of action with his earlier FCA retaliation action for res judicata purposes.

## IV.  CONCLUSION

Accordingly, since all four elements of res judicata are met with respect to Milner's instant FCA *qui tam* action and his earlier FCA retaliation action, we affirm the district court's dismissal of this case with prejudice as to Milner, as it is barred by the doctrine of res judicata.

**AFFIRMED.**