# COURT OF APPEALS OF VIRGINIA

**Record No. 0674-25-2**

BRAD FERRELL
v.
PLAYFLY, LLC

Present: Judges Causey, Raphael and Duffan
Argued at Lexington, Virginia

Opinion Issued June 16, 2026

**FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE**
Claude V. Worrell, II, Judge

E. Kyle McNew (David W. Thomas; MichieHamlett PLLC, on briefs), for appellant.

Carl Schwertz (Matthew L. Devendorf; Miles & Stockbridge, PC, on briefs), for appellee.

## PUBLISHED OPINION BY
## JUDGE STUART A. RAPHAEL

Brad Ferrell appeals the circuit court's ruling that his breach-of-contract claim against Playfly, LLC for missed installment payments was barred by res judicata based on Ferrell's earlier general-district-court (GDC) case in which he sued to recover only some of the missed payments. Playfly persuaded the circuit court to grant summary judgment on the ground that all the installments had come due by the time the GDC case was tried, and Ferrell's failure to amend his warrant in debt to include those claims barred his second suit under Rule 1:6(a).

We affirm in part and reverse in part. This suit is barred as to those payments that had come due before Ferrell filed his warrant in debt in the first case. As for payments coming due thereafter but before the trial in the first case, we reverse and remand for further proceedings. As a general matter, a plaintiff need not amend his operative pleading to sue for additional installment payments that come due thereafter. Although Playfly asks us for the first time on

appeal to recognize an exception to that rule when a party has anticipatorily repudiated the contract, we are unable to reach that question on the current record.

BACKGROUND

Because this case was resolved on Playfly's motion for summary judgment, we view the facts in the "light most favorable" to Ferrell, the non-moving party. *Howell v. Sobhan*, 278 Va. 278, 280 (2009). In doing so, we give Ferrell "the benefit of all inferences" that a factfinder "might fairly draw from the evidence." *Id.* (quoting *Brown v. Hoffman*, 275 Va. 447, 449 (2008)).

Ferrell began working for Playfly in June 2009. He signed a non-compete and non-solicitation agreement in December 2020. After Playfly terminated his employment on April 14, 2023, the parties entered into a separation agreement signed by Ferrell on May 3, 2023. The agreement established Ferrell's separation date as April 14, 2023.

The separation agreement provided for severance pay in the gross amount of $103,927.99, minus usual and required deductions. The severance payments were to be made "according to the Company's regular payroll cycle for four months" following the effective date of the agreement—May 11, "the eighth day" after Ferrell signed it. The twice-a-month payments were thus scheduled to be paid through September 2023. The separation agreement further provided for commission payments totaling $14,259.36, "paid on the pay date following the Separation Date." It also provided for a "Prorated Bonus" that was "payable within 45 days following June 30, 2023"—*i.e.*, on August 14, 2023. There was no acceleration clause if Playfly failed to make a payment when due. The agreement referenced and preserved Ferrell's obligations under his 2020 non-compete and non-solicitation agreement.

Playfly made certain commission payments and severance payments through July 2, 2023. Ferrell alleged in his complaint that he received a letter from Playfly dated June 30, 2023,

in which "Playfly declared that it would cease making payments based on claims of unspecified breaches of the non-competition agreement." Although Playfly's answer asserts that the letter speaks for itself, the letter is not in the record.

Playfly did not pay Ferrell the severance payments that were due on the July and August payroll dates. Nor did it pay him the prorated bonus.

On August 24, 2023, Ferrell sued Playfly in the GDC by filing a warrant in debt seeking $23,095.11 for failing to make "the June and July" payments, plus prejudgment interest. Despite that Playfly did not pay other severance payments that were due through September 2023, Ferrell did not seek to amend his warrant in debt to include them in that suit. He filed a bill of particulars on December 8, 2023, seeking only the amount alleged in his original warrant in debt.

At trial on February 16, 2024, Ferrell won a judgment in the GDC for the amount sued for, plus post-judgment interest and costs. Playfly paid the judgment and did not appeal.

On May 16, 2024, Ferrell sued Playfly in the circuit court, seeking the remaining unpaid severance payments and the unpaid prorated bonus. Playfly moved for summary judgment, arguing that Ferrell had split his cause of action by not including those claims in the first case.

Playfly argued that all of those unpaid amounts had come due by September 2023, so Ferrell could have amended his warrant in debt before the GDC case was tried in February 2024. The then-$25,000 jurisdictional limit in the GDC was no impediment to doing so, Playfly argued, because Code § 16.1-77 permitted the district court to transfer the case upon such amendment to the circuit court. According to Playfly, "Ferrell made a deliberate decision to file his lawsuit in a court of limited jurisdiction and then elected not to seek leave to amend and move his case to circuit court to preserve any claim he might have for the remaining payments allegedly owed under the Agreement." Ferrell countered, among other things, that Playfly's failure to pay the other installments that were due after he filed his warrant in debt involved

- 3 -

different claims from the ones he sued on, so Rule 1:6 did not require that he amend his warrant in debt to include them.

After briefing and oral argument, the circuit court agreed with Playfly that Ferrell's "failure to amend in the general district court [was] fatal to [his] attempt here to collect the balance of what is owed." So the court entered summary judgment against Ferrell. Ferrell appeals.

ANALYSIS

"Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023) (quoting Rule 3:20). In reviewing a trial court's decision to grant or deny summary judgment, "we review the application of the law to undisputed facts de novo." *Id.*

The Supreme Court in *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135 (2017), comprehensively surveyed the origins and parameters of the res judicata doctrine, now embodied in Rule 1:6. *Id.* at 141-55. "For all of the legal argot making the doctrine sound tiresomely erudite, the thought is really no more complicated than saying that . . . litigants must 'make the most of their day in court.'" *Id.* at 143 (quoting 2 Henry Campbell Black, *A Treatise on the Law of Judgments, Including the Doctrine of Res Judicata* § 500, at 760 (2d ed. 1902)). Put another way, "[t]he law should afford one full, fair hearing relating to a particular problem—but not two." *Id.* (quoting Kent Sinclair, *Guide to Virginia Law & Equity Reform and Other Landmark Changes* § 11.01, at 246 (2006)). The Court recounted how it had adopted Rule 1:6 to overrule the same-evidence test that it had applied in *Davis v. Marshall Homes, Inc.*, 265 Va. 159 (2003), a test that *Funny Guy* said "was wholly out of sync with the prior, far broader, same-subject-matter test." *Id.* at 148. "Rule 1:6 parallels the 'same transaction or occurrence' scope of Code

§§ 8.01-272 and 8.01-281." *Id.* at 150. "Thus, if the underlying dispute produces different legal claims that can be joined in a single suit under the joinder statutes, Rule 1:6 provides that they should be joined unless a judicially . . . recognized exception to res judicata exists." *Id.*

### A. Res judicata bars Ferrell's claims for unpaid amounts due when he filed his warrant in debt in the first case.

Although it was dicta, *Funny Guy* telegraphed the rule at issue here: if the claim "accrued after the filing of the first suit," that "factual sequence renders res judicata inapplicable." *Id.* at 154 n.19. That is, "res judicata does not bar a claim that does not accrue prior to the litigation triggering the bar." *Id.* at 159. The Court cited several federal cases for that proposition. *Id.* at 154 n.19. That rule has also been recognized by the United States Supreme Court: "Claim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (quoting *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016)). Indeed, it is the prevailing rule in the federal circuits.[1]

---

[1] *See, e.g.*, *Cayuga Nation v. Tanner*, 6 F.4th 361, 376 (2d Cir. 2021) ("We and several of our sister circuits have long held that, for the purpose of analyzing claim preclusion, 'the scope of the litigation is framed by the complaint at the time it is filed.'" (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir. 1997))); *Morgan v. Covington Twp.*, 648 F.3d 172, 177 (3d Cir. 2011) (agreeing with other circuits that "have already adopted a bright-line rule that res judicata does not apply to events post-dating the filing of the initial complaint" (italics omitted)); *Com. Box & Lumber Co. v. Uniroyal, Inc.*, 623 F.2d 371, 374 n.2 (5th Cir. 1980) (finding that although plaintiff "could have chosen to include the present issue in its first" lawsuit, "[i]t was not required to do so"); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) ("[R]es judicata does not apply to claims that were not ripe at the time of the first suit."); *Heard v. Tilden*, 809 F.3d 974, 979 (7th Cir. 2016) ("The doctrine of 'claim preclusion generally does not bar a subsequent lawsuit for issues that arise after the operative complaint is filed' in the first lawsuit." (quoting *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 652 (7th Cir. 2011))); *Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Eng'rs*, 440 F.3d 1038, 1043 (8th Cir. 2006) ("It is well settled that claim preclusion [res judicata] does not apply to claims that did not arise until *after* the first suit was filed." (alteration in original)); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) ("[C]laim preclusion does not apply to claims that accrue after the filing of the operative complaint."); *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006) ("'New' claims, arising after the complaint has been filed, but before judgment, may be . . . litigated in a subsequent action."); *Milner v. Baptist Health Montgomery*,

One of the federal circuit cases cited favorably by *Funny Guy*, 293 Va. at 154 n.19, bears emphasis here. In *Hatch v. Boulder Town Council*, 471 F.3d 1142 (10th Cir. 2006), the court adopted the Second Circuit's reasoning that a plaintiff's ability to amend a complaint to include claims that accrued after the filing did not obligate him to amend:

> For purposes of res judicata, the scope of litigation is framed by the complaint [in the prior action] at the time it is filed. The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated. Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so.

*Id.* at 1150 (alteration in original) (italics omitted) (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir. 1997)). Courts have noted the practical wisdom of steering clear of a rule that would compel frequent pleading amendments. "A contrary rule would only invite disputes about whether plaintiffs could have amended their initial complaints to assert claims based on later-occurring incidents. . . . That would be especially unwise in this area of the law, in which certainty and predictability are important." *Morgan v. Covington Twp.*, 648 F.3d 172, 178 (3d Cir. 2011); *see also L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 750 F.2d 731,

---

132 F.4th 1354, 1362 (11th Cir. 2025) ("[F]or res judicata purposes, claims that could have been brought are claims in existence at the time the original complaint [was] filed." (second alteration in original)); *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010) ("The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated." (italics omitted)).

A learned treatise supports that consensus in cases seeking money damages but argues that a different rule may be appropriate for cases seeking injunctive or declaratory relief. *See* 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4409, at 240-41 (2016) ("The rule that makes most sense for damages claims is not always suitable for claims for declaratory or injunctive relief that intrinsically deal with conduct persisting through trial or into the future. The claim precluded by such an action often should embrace all matters arising prior to the close of trial or even judgment, subject to the caveat that a purely declaratory proceeding often should not preclude an action brought after the actual occurrence of an injury that was only anticipated at the time of the first action." (footnote omitted)). As Ferrell did not seek equitable or declaratory relief, we need not decide whether Virginia law recognizes that distinction.

739 n.9 (9th Cir. 1984) ("We decline to impose a potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or lost.").

As the United States Supreme Court has recognized, this is the same rule found in the Restatement (Second) of Judgments (A.L.I. 1982). *See Lucky Brand*, 590 U.S. at 415. "A judgment in an action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of failure to render performance due after commencement of the first action." Restatement (Second) of Judgments § 26 cmt. g. By contrast, a creditor's suit for overdue items on a running account that "fails to include one among several past due items" would bar "a further action by him to recover the omitted item." *Id.* § 24 cmt. d. That result "conforms to ordinary commercial understanding and convenience." *Id.*

Rule 1:6 reflects the Restatement rule, applying the "broad view of res judicata, under which a prior final judgment on the merits of a cause of action extinguishes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Funny Guy*, 293 Va. at 146 (quoting Restatement (Second) of Judgments § 24(1)); *see also id.* at 150 (noting that Rule 1:6 derived from a recommendation by the Boyd-Graves Conference to adopt "the 'same transaction or occurrence' formulation in Code §§ 8.01-272 and 8.01-281 and the second Restatement of Judgments"). The second sentence of Rule 1:6(a) echoes the idea that the "claim for relief" that defines the scope for claim preclusion is the claim stated in the party's operative pleading:

> A party whose *claim for relief* arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon

which any claims in the prior proceeding depended, or the particular remedies sought. A *claim for relief* pursuant to this rule includes those *set forth in a complaint, counterclaim, cross-claim or third-party pleading*.

Rule 1:6(a) (emphases added).

After briefing was completed here, we held in *Seaview Apartments, LLC v. City of Newport News*, 86 Va. App. 583 (2026), that a plaintiff's first suit for certain unpaid monthly utility bills barred the plaintiff from recovering in a second suit on claims for other monthly utility bills "that were ripe when it brought the initial suit."[2] *Id.* at 599. The plaintiff's claim was barred as to those utility bills that were due but not included in the first lawsuit, but we remanded the case for the plaintiff to pursue its claims for bills that were not yet due when the first lawsuit was filed. *Id.* We cited *Jones v. Morris Plan Bank*, 168 Va. 284, 292 (1937), for the proposition "that a suit on a single default on an installment contract will bar separate actions on other defaulted installments due when the suit is brought." *Seaview*, 86 Va. App. at 599. The rule stated in *Jones* adheres to the Restatement rule described above. As *Jones* explained:

> A contract to pay money in installments is divisible in its nature. Hence, each default in the payment of an installment may be the subject of an independent action provided it is brought before the next instal[l]ment becomes due, generally speaking, however, a recovery for one installment will bar an action for the recovery of other installments then due. In other words, each action should include every installment due at the time it is commenced, unless a suit is, at the time, pending for the recovery thereof, or other special circumstances exist.

168 Va. at 292 (quoting 1 Am. Jur., *Actions*, § 96 (1936)).

Applying this understanding of Rule 1:6, we find that Ferrell's failure to include all claims for payments due under the separation agreement when he filed his warrant in debt on

---

[2] In response to our invitation, the parties filed supplemental briefs discussing the relevance to this case of *Seaview* and the Restatement.

August 24, 2023 bars him from recovering on those claims here. We leave it to the circuit court on remand to determine the claims that had accrued as of that date.[3]

We reject Ferrell's argument that he did not have to join those claims because doing so would have exceeded the then-$25,000 jurisdictional limit in the GDC.[4] As we said in *Seaview*, "[a]lthough the combined claims would have exceeded the monetary threshold for jurisdiction in general district court, the [plaintiff] could have brought them as one suit in circuit court." 86 Va. App. at 598 n.8. What is more, Ferrell would have been permitted to transfer the case to the circuit court if Ferrell's amendment to the warrant in debt resulted in a claim exceeding the jurisdictional limit. *See* Code § 16.1-77(1) ("While a matter is pending in a general district court, upon motion of the plaintiff seeking to increase the amount of the claim, the court shall order transfer of the matter to the circuit court that has jurisdiction over the amended amount of the claim . . . .").

To be sure, Ferrell was "the master of his own case, . . . entitled to choose the forum in which he will proceed." Ferrell Br. 10. But that privilege did not empower him to split his cause of action. The prohibition on "splitting a claim is applicable although the first action is brought in a court [that] has no jurisdiction to give a judgment for more than a designated amount." Restatement (Second) of Judgments § 24 cmt. g. "The plaintiff, having voluntarily brought his action in a court [that] can grant him only limited relief, cannot insist upon maintaining another action on the claim." *Id.*

---

[3] Playfly argues that claim preclusion bars Ferrell's claim for the "Prorated Bonus" that was due on or before August 14, ten days before Ferrell filed his warrant in debt. Ferrell acknowledged at oral argument here that this claim would be time-barred *if* in fact it had accrued before August 24. The circuit court should answer that question on remand.

[4] The General Assembly has since raised the jurisdictional limit in cases like this one to $50,000. *See* 2025 Va. Acts ch. 338.

*B. The record is insufficient to show that Playfly anticipatorily repudiated the separation agreement so that Ferrell had to join all his claims in the first case.*

The Restatement rule described above is subject to some important exceptions under which the first lawsuit should include claims for future installment payments. For instance, if a contract contains an acceleration clause that provides that the failure to pay one installment triggers the promisor's duty to pay all of them, a creditor's suit on only several unpaid installments will bar a second suit for the rest. *See Jones*, 168 Va. at 290-91 ("[U]nder the unconditional acceleration provision in the note involved here . . . , the entire amount due upon the note became due and payable when default was made in paying an installment. . . . All installments having matured at the time the action was begun, under well settled principles, those not embraced in that action are now barred."). The separation agreement here, however, had no such acceleration provision.

Some courts have also recognized the exception that claim preclusion will apply to claims accruing after the first lawsuit was filed if those claims were *actually* brought into the first case. *Contrast Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[C]laims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action."), *with Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1358-59 (11th Cir. 1998) (finding that plaintiff's references on brief in the first case to after-accrued claims "were insufficient to put [those] claims . . . before the district court"). But as Playfly does not advance that theory here, we leave for another day whether Virginia law recognizes that exception.[5]

Another exception may apply when the promisor anticipatorily repudiates the entire contract. "[A] party's renunciation or abandonment of his or her contractual duties, after

---

[5] For additional exceptions to the general rule, see Restatement (Second) of Judgments § 26 ("Exceptions to the General Rule Concerning Claim Splitting").

performance has commenced under a contract requiring continuous performance, constitutes a repudiation, which may be treated by the party to whom the duty is owed as an anticipatory breach of the contract." *Bennett v. Sage Payment Sols., Inc.*, 282 Va. 49, 58 (2011). Authorities outside of Virginia have recognized that

> if the initial breach is accompanied or followed by a "repudiation" . . . and the plaintiff thereafter commences an action for damages, *he is obliged in order to avoid 'splitting,' to claim all his damages with respect to the contract, prospective as well as past*, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract.

Restatement (Second) of Judgments, § 26 cmt. g (emphasis added); *accord* Restatement (Second) of Contracts § 243 cmt. b (A.L.I. 1981) ("An injured party who has a claim for damages for total breach as a result of a repudiation, and who asserts a claim merely for damages for partial breach, runs the risk that if he prevails he will be barred under the doctrine of merger from further recovery, even in the event of a subsequent breach, because he has 'split a cause of action.'" (quoting Restatement (Second) of Judgments §§ 24-26)). Expressed another way, "[a]ll remedies should be sought in the first action if it is clear that an entire contract has been repudiated." 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4409, at 255 (2016).

We do not reach the question here whether Virginia claim-preclusion law follows the Restatement rule in requiring a plaintiff to sue for all future installments when the defendant has anticipatorily repudiated the entire contract. Playfly did not argue in the circuit court that it anticipatorily repudiated all its obligations under the separation agreement, thereby triggering Ferrell's obligation to sue for all past and future installments. But Playfly has latched onto that argument in response to our request for supplemental briefing. Ferrell counters with two arguments, one of which is meritorious.

We reject Ferrell's first argument—that Playfly cannot rely on the doctrine of anticipatory repudiation because it failed to raise that argument in the circuit court. To the contrary, an appellate court "may uphold a judgment even when the correct reasoning is not mentioned by a party in trial argument or by the trial court in its decision, as long as the record contains sufficient information to support the proper reason." *Haynes v. Haggerty*, 291 Va. 301, 305 (2016).

But we agree with Ferrell that the record is insufficient to apply the right-for-the-wrong-reason doctrine here because Playfly's June 30, 2023 letter is not in the record. An appellate court's ability to affirm a judgment as right for the wrong reason is limited "to those cases where the right reason is supported by the record, no further development of the facts is necessary to support it and the appellant was 'on notice in the trial court that he might be required to present evidence to rebut it.'" *Lynnhaven Dunes Condo. Ass'n v. City of Virginia Beach*, 284 Va. 661, 670 (2012) (quoting *Rives v. Commonwealth*, 284 Va. 1, 2-3 (2012)).

Those requirements are not met here. "Whether there has been a repudiation depends on the facts and circumstances of each case." *Under Wild Skies, Inc. v. Nat'l Rifle Ass'n*, 304 Va. 310, 316 (2025). It is "firmly established that for a repudiation of a contract to constitute a breach, the repudiation must be clear, absolute, unequivocal, and must cover the entire performance of the contract." *Bennett*, 282 Va. at 59 (quoting *Vahabzadeh v. Mooney*, 241 Va. 47, 50 (1991)). "Whether the repudiation is 'sufficiently positive or unequivocal to give rise to a cause of action for anticipatory breach' is a question of fact for the jury." *Under Wild Skies*, 304 Va. at 317 (quoting *Bd. of Supervisors v. Ecology One, Inc.*, 219 Va. 29, 33 (1978)). Although Ferrell alleged in paragraph 13 of his complaint that Playfly's June 30, 2023 letter "declared that [Playfly] would cease making payments based on claims of unspecified breaches of the non-competition agreement," Playfly's answer responded that the letter "speaks for itself." Playfly

then "denie[d] any allegations in ¶ 13 that are inconsistent with the text of the document."  Given that sphinxlike response, we cannot determine whether Playfly's letter completely repudiated its further payment obligations.[6]  As Ferrell reasonably points out:

> Unknown is whether the June 30, 2023 letter referenced in the Complaint constituted a statement by Playfly that it was going to stop making payments unless Appellant "cured" the claimed breaches versus an unequivocal, unqualified assertion that it was declaring Appellant in breach of the Separation Agreement and repudiating any further obligations by either party under the Separation Agreement.

Ferrell Supp. Br. 7.  In addition, Playfly's failure to raise the anticipatory-repudiation argument in its summary-judgment motion deprived Ferrell of a fair opportunity to develop his response to that claim or to offer evidence in opposition.

We sit as a "court[] of review, not first view."  *Commonwealth v. Holland*, 304 Va. 34, 38 (2025).  Our ruling here is without prejudice to Playfly's ability on remand to assert any valid basis in fact and law to show that Ferrell should have raised all of his breach-of-contract claims in the first lawsuit, and Ferrell's ability to claim otherwise.  We hold simply that any claim by Ferrell for installment payments due when he filed his warrant in debt is barred if Ferrell failed to include that claim in his first lawsuit.

---

[6] As neither party raises the issue here, we leave for another day whether the document-speaks-for-itself response satisfies the pleading requirement that the adverse party's denial "must fairly respond to the substance of the allegation" and that "[a] party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest."  Rule 1:4(e). *Compare Lorenz v. Parker*, 82 Va. App. 413, 424 n.8 (2024) (finding the appellants' assignment of error insufficient to permit review of the trial court's ruling that a document-speaks-for-itself response constituted a deemed admission under Rule 4:11), *with State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001) (calling the speaks-for-itself response an "unacceptable device, used by lawyers who would prefer not to admit something that is alleged about a document in a complaint (or who may perhaps be too lazy to craft an appropriate response to such an allegation)").

CONCLUSION

The circuit court correctly held that Ferrell's claims for unpaid installments were barred if those installments (1) had come due by August 24, 2023 (the date Ferrell filed his warrant in debt), and (2) were not included in the first lawsuit. The circuit court erred, however, in concluding that res judicata barred the claims for installments due thereafter on the theory that Ferrell should have amended his warrant in debt to include them. The case is remanded for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*